GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA H. FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, CA 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant
LINWEI DING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>LINWEI DING,<br><br>               Defendant. | Case No.  3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S NOTICE OF MOTION AND MOTION FOR A BILL OF PARTICULARS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     April 2, 2025<br>Time:    1:00 pm<br>Courtroom: 4 (17th Floor)<br>Judge:   Hon. Vince Chhabria<br>             450 Golden Gate Avenue<br>             San Francisco, CA 94102 |

## NOTICE OF MOTION & MOTION FOR A BILL OF PARTICULARS

**TO THE COURT AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 2, 2025, at 1:00 p.m. or as soon thereafter as the matter may be heard at a time set by The Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Linwei Ding ("Mr. Ding"), will move this Court for an order requiring the government to provide a bill of particulars under Federal Rule of Criminal Procedure 7(f).  This Motion for a Bill of Particulars ("Motion") is based on the grounds that all fourteen (14) counts in the Superseding Indictment (Dkt. 44; the "Superseding Indictment" or "S.I.") are so vague and overbroad that the indictment fails to provide Mr. Ding with adequate notice of what criminal activity is alleged.

Specifically, Mr. Ding's Motion seeks an order from the court compelling the government to provide the following information, which is essential for the adequate preparation of Mr. Ding's defenses, to prevent undue risk of surprise at trial, and to prevent any future prosecution for the same alleged offense:

**<u>Specific Facts Identifying Which Documents And Elements Therein the Government Alleges are Protectable Trade Secrets</u>**:

1. For each of the alleged Trade Secret Categories (S.I. ¶¶ 36-42), identify each document the government claims contains or comprises a trade secret;

2. For each document identified in No. 1 to contain or comprise a trade secret, identify the specific pages, portions, diagrams, line items or text of each document that the government claims are trade secrets under the applicable law; and

3. To the extent the government alleges that Trade Secrets Categories Nos. 1-7 constitute combination or compilation trade secrets, identify with particularity (a) the proprietary components of the alleged combination or compilation trade secret; and (b) why the alleged combination or compilation trade secret is unique and has independent value that satisfies the legal requirements under federal trade secret law.

**<u>Specific Facts Regarding the Government's Allegation That Mr. Ding Satisfied the Intent Element of 18 U.S.C. § 1831 (Charge Nos. 7-14)</u>**:

4. Identify with particularity which specific "foreign government, foreign instrumentality or foreign agent" the government alleges Mr. Ding intended or knew his alleged offenses would benefit (*id.* ¶ 46);

5. To the extent the government alleges that Mr. Ding intended or knew his alleged offenses would benefit any "foreign instrumentality" and/or "foreign agent," identify with particularity the relationship, ties and associations between such foreign instrumentality and/or foreign agent and the respective foreign government (*id.* ¶ 46);

i

1

2          This Motion is based on this Notice of Motion and Motion, the accompanying

3   Memorandum of Points and Authorities, the attached Declaration of Grant P. Fondo ("Fondo

4   Decl."), the pleadings and papers filed in this matter, and on other such arguments or evidence as

5   the Court shall deem proper.

6

7

8   Dated: February 25, 2025                    Respectfully submitted,

9                                               GOODWIN PROCTER LLP

10                                              By: */s/ Grant P. Fondo*
                                                    DARRYL M. WOO (SBN 100513)
11                                                  *DWoo@goodwinlaw.com*
                                                    GRANT P. FONDO (SBN 181530)
12                                                  *GFondo@goodwinlaw.com*
                                                    JESSICA H. FUZELLIER (SBN 315208)
13                                                  *JHFuzellier@goodwinlaw.com*
                                                    FARZAD FEYZI (SBN 343538)
14                                                  *FFeyzi@goodwinlaw.com*
                                                    DAVID RAPP-KIRSHNER (SBN 344494)
15                                                  *DRappKirshner@goodwinlaw.com*
                                                    NIRAV BHARDWAJ (SBN 350829)
16                                                  *NBhardwaj@goodwinlaw.com*

17                                                  Attorneys for Defendant
                                                    LINWEI DING
18

19

20

21

22

23

24

25

26

27

28

ii

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.   The Superseding Indictment Fails To Identify Any Trade Secrets With Particularity. ................................................................................................ 3

    B.   The Superseding Indictment Fails to Allege Specific Facts Regarding Mr. Ding's Alleged Economic Espionage. ............................................................ 4

    C.   The Government's Voluminous Discovery, Overbroad Discovery Designations and Refusals to Identify the Trade Secrets with Particularity. ......................... 5

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ..................................................................................................... 7

    A.   The Government Must Provide A Bill of Particulars For the Theft of Trade Secret Charges. ................................................................................................ 7

        1.   The Superseding Indictment Fails to Identify the Alleged Trade Secrets With Specificity. ...................................................................................... 7

        2.   The Government's Supplemental List of "Example" Trade Secrets Does Not Adequately Identify the Trade Secrets at Issue and Cannot Salvage the Facially Deficient Superseding Indictment. ............................................. 10

        3.   Further Specificity is Particularly Warranted Due to the Government's Voluminous Discovery and Overbroad Designations. ............................... 11

        4.   The Deficient Identification of Trade Secrets Materially Prejudices Mr. Ding's Ability to Prepare for Trial and Creates an Undue Risk of Surprise. ............................................................................................... 13

    B.   The Government Must Provide A Bill of Particulars For the Economic Espionage Act Charges. ............................................................................... 15

V.    CONCLUSION. ............................................................................................... 16

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alta Devices, Inc. v. LG Elecs., Inc.*,

5
No. 18-cv-00404-LHK (VKD), 2019 WL 176261 (N.D. Cal. Jan. 10, 2019) ....................... 10

6

*Coast Hematology-Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Med. Ctr.*,

7
58 Cal. App. 5th 748 (2020)................................................................................................. 14

8

*Hamling v. United States*,

9
418 U.S. 87 (1974) .......................................................................................................... 2, 6

10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020)........................................................................................ 10, 14

11

*Myrio Corp. v. Minerva Network, Inc.*,

12
No. C 00-20996, 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 4, 2001) ........................... 10

13

*Swarmify, Inc. v. Cloudflare, Inc.*,

14
No. C 17-06957 WHA, 2018 WL 2445515 (N.D. Cal. May 31, 2018)................................ 14

15

*United States v. Case*,
No. 3:06-CR-210-TSL (LRA), 2007 WL 1746399 (S.D. Miss. June 15, 2007)..................... 8

16

*United States v. Chen*,

17
2006 WL 3898177 (N.D. Cal. Nov. 9, 2006)......................................................................... 12

18

*United States v. Giese*,

19
597 F.2d 1170 (9th Cir. 1979).............................................................................................. 7

20

*United States v. Holmes*,
No. 5:18-CR-00258-EJD, 2020 WL 666563 (N.D. Cal. Feb. 11, 2020) ............................... 16

21

*United States v. Liang Chen*,

22
No. 17-CR-00603-BLF-1, 2020 WL 6342931 (N.D. Cal. Oct. 29, 2020)....................*passim*

23

*United States v. Long*,

24
706 F.2d 1044 (9th Cir. 1984).............................................................................................. 7

25

*United States v. Mitchell*,
744 F.2d 701 (9th Cir. 1984)................................................................................................ 7

26

*United States v. Richardson*,

27
No. 90 CR 345, 1990 WL 70335 (N.D. Ill. May 14, 1990) ................................................... 9

28

i

*United States v. Salyer*,
    No. CR-S-10-0061 LKK (GGH), 2011 WL 6026119 (E.D. Cal. Dec. 2, 2011) .................... 12

*United States v. Trumpower*,
    546 F. Supp. 2d 849 (E.D. Cal. 2008) ................................................................................. 14

*United States v. United Microelectronics Corp.*,
    No. 3:18-CR-00465-MMC (N.D. Cal. June 23, 2023), Dkt. 188 ................................. 7, 9, 10

*United States v. Ward*,
    No. CR-11-2123 RMP (E.D. Wash. June 21, 2012), Dkt. 175 ........................................ 12, 13

**Statutes**

18 U.S.C. § 1831 ............................................................................................................. 2, 4, 15, 16

18 U.S.C. § 1832 ....................................................................................................................... 1, 3, 16

**Other Authorities**

Federal Rule of Criminal Procedure 7(c)(1) ............................................................................. 2, 6

Federal Rule of Criminal Procedure 7(f) ................................................................................... 1, 6

U.S. CONST. amend. XI .............................................................................................................. 6, 10

U.S. CONST. amend. XIV ................................................................................................................. 10

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    The Superseding Indictment alleges that Mr. Ding misappropriated trade secrets in

4    violation of 18 U.S.C. § 1832 by "upload[ing] **more than 1,000 unique files** containing Google

5    Confidential Information, **including the trade secrets**" at issue, yet does not provide any detail

6    as to which, how many, or which portions of those 1,000+ highly technical files contain or

7    comprise trade secrets, nor where such trade secrets are located in the 43,500+ pages of

8    confidential discovery produced by the government.  Dkt. 44 ¶ 17 (emphasis added).  Not only

9    has the government doubled the number of "unique files" in this most recent indictment, from

10   500 to 1,000 (and, of course, Mr. Ding is not being charged with stealing "unique files"), but the

11   government has still failed to provide fair notice of what trade secrets Mr. Ding in fact allegedly

12   stole.

13    Instead of providing Mr. Ding fair notice of what he is alleged to have stolen, the

14   Superseding Indictment organizes the unknown quantity of purported artificial intelligence

15   related trade secrets into seven broad and ambiguous categories, such as "[d]ocuments including

16   details of the design, performance, and operation of Google's custom designed TPU chips, TPU

17   machines, and TPU systems" or "[d]esign documents for Google's GPU software that facilitated

18   communication between GPUs and allocated and managed collections of interconnected GPUs to

19   different workloads." *Id.* ¶¶ 37, 40.  While the government produced a non-exhaustive list of

20   "example" trade secrets for each category—consisting solely of the filenames of various PDFs—

21   such list does nothing to alleviate Mr. Ding's extraordinary burden of having to comb through the

22   4,400+ "Confidential" documents produced by the government (totaling over *43,500* pages) and

23   11.5 terabytes of data, and guess which files and the portions thereof the government actually

24   alleges are trade secrets.[1]  A person charged with a federal crime should not be relegated to

25   guessing which of the 4,400+ files (43,500+ pages) Google and the government allege contain the

26

27   _____

[1] Mr. Ding has asked the government to distinguish between documents containing or comprising trade secrets and otherwise generally confidential documents, but the government has refused. *See* Mr. Ding's Motion to Modify Protective Order (Dkt. 53).

28

1   stolen trade secrets.  It should not be difficult to identify the alleged trade secrets—presumably

2   the government and Google have already done the work—the government just needs to identify

3   the Bates numbers, for example, of pages of the files that contain the alleged trade secrets.

4   Eliminating this unfair guessing game and permitting Mr. Ding fair notice of the purported trade

5   secrets the government (and Google) alleges he stole is the very purpose of Federal Rule of

6   Criminal Procedure 7(c)(1).  Placing the burden on Mr. Ding to guess and waste tremendous

7   resources is contrary to  Federal Rule of Criminal Procedure 7's requirement that an indictment

8   "fairly inform[] a defendant of the charge against which he must defend[.]"  *Hamling v. United*

9   *States*, 418 U.S. 87, 117 (1974).

10      What's more, by failing to identify the trade secrets at issue, particularly given the volume

11   and technical nature of the data here, the government is enabled to unfairly and unconstitutionally

12   hide the ball and employ a shifting-sands approach to its charges all the way through trial.

13   Doubling the number of "unique files" from 500 to 1,000+, while also sending a non-exhaustive

14   list of 108 "examples" of files (not pages) that in some capacity either comprise of or contain

15   alleged stolen trade secrets is not narrowing the universe, especially given the 4,400+ documents

16   and 43,500+ pages of "confidential" discovery.  This lack of fair notice is particularly concerning

17   given that the government charged this case more than 12 months ago, and the investigation files

18   already indicate that, of course, not all of the originally purported trade secrets are trade secrets at

19   all.  *See* Ex. A[2] (US-0003359) (of the 25 confidential documents reviewed by a Google engineer,

20   he was "quite sure that none of them constitute trade secrets").  Without knowing which portions

21   of which documents the government asserts are trade secrets, Mr. Ding has no way to

22   independently assess or rebut the government's allegations regarding trade secrecy.

23      The Superseding Indictment is similarly deficient in its factual allegations concerning the

24   Economic Espionage Act (18 U.S.C. § 1831, "EEA") claims against Mr. Ding.  In addition to

25   failing to adequately identify the purported trade secrets at issue, the Superseding Indictment also

26   fails to articulate anything more than a conclusory allegation that Mr. Ding "intend[ed] or kn[ew]

27

28

---

[2] Unless otherwise noted, all exhibit citations herein are exhibits to the Declaration of Grant P. Fondo in Support of Mr. Ding's Motion for Bill of Particulars ("Fondo Decl.").

that [his] offense would benefit any foreign government, foreign instrumentality or foreign agent"—the lynchpin of an EEA claim.  S.I. ¶ 46.  While the Superseding Indictment alleges in passing that a startup associated with Mr. Ding, Shanghai Zhisuan Technology Co. Ltd. ("Zhisuan"), "intended to market itself to and provide services to multiple PRC-controlled entities, including government agencies and universities," the government fails to name a single one of these "multiple" entities, fails to provide any factual allegations regarding their purported connections to the People's Republic of China ("PRC"), and fails to actually indicate whether these entities are a part of the government's theory of Mr. Ding's criminal intent.  *Id.* ¶ 26.  Accordingly, the government's conclusory allegations fail to put Mr. Ding on notice of the EEA claims against him and materially prejudice Mr. Ding's ability to prepare his defenses and avoid undue surprise at trial.

For these reasons, Mr. Ding respectfully requests that the Court grant his instant Motion and order the government to produce a bill of particulars that adequately identifies the actionable trade secrets the government intends to rely on at trial and articulates its factual theory of economic espionage.

## II.  BACKGROUND

### A.  The Superseding Indictment Fails To Identify Any Trade Secrets With Particularity.

The March 5, 2024, Indictment alleged that Mr. Ding misappropriated an unspecified amount of artificial intelligence ("AI") related trade secrets from his then-employer, Google LLC ("Google"), by "upload[ing] more than 500 unique files containing Google Confidential Information, including the trade secrets," in violation of 18 U.S.C. § 1832.  Dkt. 1 ¶ 15.  These trade secrets were generally described to relate to the software and hardware components of Google's supercomputers used for AI machine learning and were grouped into four broad categories including "[c]hip architecture and software design specifications for TPU version 4 [and 6]" and other hardware and software specifications, *inter alia.  Id.* ¶ 32.

On February 4, 2025, the government superseded its Indictment, now alleging that Mr. Ding uploaded "**more than 1,000 unique files**" containing an unspecified amount of trade secrets.  Dkt.

3

44 ¶ 17 (emphasis added).  The Superseding Indictment also now grouped the alleged trade secrets into seven different "categories," such as "[d]ocuments including details of the design, performance, and operation of Google's custom designed TPU chips, TPU machines, and TPU systems" or "[d]esign documents for Google's GPU software that facilitated communication between GPUs and allocated and managed collections of interconnected GPUs to different workloads."  *Id.*  ¶¶ 37, 40.  Beyond these broad and ambiguous categories, the Superseding Indictment did not provide any further detail into or identification of the trade secrets at issue, nor did it disclose the number of trade secrets at issue.  *Id.*, *et seq*.  Concurrently with the filing of the Superseding Indictment, the government served Mr. Ding's counsel with a document "listing examples of the key documents from each trade secret category in the superseding indictment." Ex. B.  For each of the seven categories, the document listed the filenames of anywhere between three and twenty-seven PDFs, for a total of 108 unique files consisting of 2,473 total pages, without any further description, detail, or corresponding Bates numbers of what information within these 108 unique files contains the alleged trade secret information.  *Id.*  In other words, the government provided no indication as to whether it was asserting that each file itself constituted a trade secret or whether the trade secrets were only specific portions therein.  *Id.*

### B.    The Superseding Indictment Fails to Allege Specific Facts Regarding Mr. Ding's Alleged Economic Espionage.

The Superseding Indictment also added seven new charges for alleged violations of the Economic Espionage Act (18 U.S.C. § 1831(a)(1)-(3)), corresponding to each category of trade secret Mr. Ding is accused of misappropriating.  S.I. ¶ 46.  The Superseding Indictment alleges that a startup associated with Mr. Ding, Zhisuan, "intended to market itself to and provide services to multiple PRC-controlled entities, including government agencies and universities." *Id.* ¶ 26. However, the Superseding Indictment fails to name or identify a single one of the "multiple" entities, fails to state the basis for its belief that such entities were controlled by the PRC, and fails to articulate whether the alleged relationships with these purported PRC-controlled entities is one of the bases for the government's conclusory allegation that Mr. Ding "intend[ed]

or kn[ew] that [his] offense would benefit any foreign government, foreign instrumentality or foreign agent" in violation of the EEA.  *Id.* ¶ 46.

**C.    The Government's Voluminous Discovery, Overbroad Discovery Designations and Refusals to Identify the Trade Secrets with Particularity.**

To date the government has produced over 4,400 documents designated as "Confidential" under the Interim Stipulated Protective Order (Dkt. 13; "Interim PO"), translating to over 43,500 pages.  Fondo Decl. ¶ 5.  The government has also produced over 11.5 terabytes of data, which roughly translates to anywhere between 67,796,000 and 83,333,333 pages, depending on the type of page.  *Id.* ¶ 6.

The Interim PO provides that a document may be designated as "Confidential" if the designating party has a good faith belief that it contains a trade secret or other information that was intended to be kept secret.  Dkt. 10 §§ 1(a), 2.  However, since the government's first document productions, Mr. Ding has raised serious concerns over the government's over-designation of non-confidential or publicly-available information as "Confidential."  For instance, one "Confidential" document consisted solely of the text "Power-on self-test" and a link to a publicly available Wikipedia page, located at <https://en.wikipedia.org/wiki/Power-on_self-test>. *See* Ex. C (GOOG-0014405).  Another confidential document consisted solely of the text "AIGC" and a link to a publicly-available blog, located at <https://www.jasper.ai/blog/ai-content-generator>.  *See* Ex. D (GOOG-0001626).

Mr. Ding's concerns were further realized by an FBI investigation report containing a glaring admission from a Google investigator  who, after reviewing many of the purported confidential documents, was "quite sure that none of them constitute trade secrets since they have been open sourced or were published by Google." *See* Ex. A (US-0003359).  While the government agreed to de-designate certain egregious mis-designations and claimed that it would remedy such over-designations in future productions, it also tried to shift the burden to Mr. Ding, asking him to "continue to identify specific documents that [he] believe[s] may be improperly designated Confidential" so that the government could "continue to evaluate and de-designate documents on a rolling basis."  Ex. E (Sept. 11, 2024, Email from C. Boome).

1    Unsatisfied with the government's efforts to segregate and identify the truly confidential

2    documents in its productions, Mr. Ding then proposed a series of reasonable modifications to the

3    Interim Protective Order to bring the inappropriately shifted burden down to something

4    manageable.. Under the Interim Protective Order, counsel has already spent countless hours sitting

5    with Mr. Ding in a conference room watching him review documents under restrictive conditions.

6    Fondo Decl. ¶ 10.  Recognizing the burden and impracticality of this setup, on January 3, 2025,

7    defense counsel reached out to the government to propose a modification to the Protective Order.

8    *See* Ex. F (Jan. 3, 2025, Email from defense counsel to government).  After much meeting and

9    conferring, including over the Mr. Ding's  proposed modification of the protective order to

10   implement a two-tier confidentiality designation, the parties reached agreement on some items but

11   the government rejected the request for a two-tier system, a bifurcated review process, or any

12   revision of its designations for the 4,400+ documents.  Ex. F (Feb. 14, 2025, Email from M.

13   Priedeman).  As a result, on Tuesday, February 18, 2025, Mr. Ding filed a Motion to Modify the

14   Protective Order, which is scheduled to be heard on March 19, 2025.  Dkt. 53.

15   **III.    LEGAL STANDARD**

16       The Sixth Amendment guarantees the right of the accused to be fairly informed of the nature

17   and cause of the accusations against him.  U.S. CONST. amend. XI.  This Constitutional principle

18   of fair notice is the foundation for Federal Rule of Criminal Procedure 7, which requires that a

19   federal indictment "must be a plain, concise, and definite written statement of the essential facts

20   constituting the offense charged."  Fed. R. Crim. Proc. 7(c)(1).  An indictment is only sufficient if

21   it "contains the elements of the offense charged and fairly informs a defendant of the charge against

22   which he must defend."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  Where a federal

23   indictment is deficient, district courts are empowered to "direct the filing of a bill of particulars"

24   under Fed. R. C. P. 7(f) in order to allow the defendant to adequately prepare for trial and to

25   minimize or avoid surprise at trial:

26           The bill of particulars serves three functions: to inform the
             defendant of the nature of the charge against him with sufficient
27           precision to enable him to prepare for trial, to avoid or minimize the
             danger of surprise at the time of trial, and to enable him to plead his

28

6

1

2

acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

3    *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (cleaned up); *see United States v.*

4    *Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) ("The purposes of a bill of particulars are to minimize

5    the danger of surprise at trial and to provide sufficient information on the nature of the charges to

6    allow preparation of a defense.").  In deciding on a motion for bill of particulars, courts "should

7    consider whether the defendant has been advised adequately of the charges through the indictment

8    and all other disclosures made by the government[,]" including the volume and complexity of

9    discovery materials.  *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984).

10   **IV.    ARGUMENT**

11        **A.    The Government Must Provide A Bill of Particulars For the Theft of Trade Secret Charges**

12

13        **1.    The Superseding Indictment Fails to Identify the Alleged Trade Secrets With Specificity.**

14        The Superseding Indictment's deficient identification of the purported trade secrets at issue

15   in Counts One through Seven deprives Mr. Ding of fair notice of the charges against him.  When a

16   criminal defendant is accused of misappropriating trade secrets, the Northern District has held that

17   the operative indictment must "identify the alleged trade secrets with particularity."  *United States*

18   *v. Liang Chen*, No. 17-CR-00603-BLF-1, 2020 WL 6342931, at *5 (N.D. Cal. Oct. 29, 2020).

19   Where, such as here, the government directs the defendant "to a universe of information that

20   contains the alleged trade secrets," an indictment will be deemed deficient and a bill of particulars

21   will be deemed necessary.  *Id.*  Further, where a document purportedly contains both trade secret

22   and non-trade secret information, the particularity requirement requires that the government

23   specifically identify which portion(s) therein are being asserted as trade secrets.  *See, e.g.*, Order

24   Granting in Part & Den. in Part Defs.' Mot. for Bill of Particulars, *United States v. United*

25   *Microelectronics Corp.*, No. 3:18-CR-00465-MMC (N.D. Cal. June 23, 2023), Dkt. 188 (the "UMC

26   Order") (granting motion for bill of particulars and requiring that government identify the specific

27

28

7

portions and components it contends were trade secrets).[3]  Under these standards, the Superseding Indictment's identification of trade secrets—or lack thereof—is facially deficient and a bill of particulars is warranted.

Here, the Superseding Indictment does not provide _any_ identification or description of the trade secrets at issue beyond grouping them into seven broad and ambiguous categories arranged by subject matter. For instance, "Trade Secret Category 2" refers to unspecified "[d]ocuments including details of the design, performance, and operation of Google's custom designed TPU chips, TPU machines, and TPU systems."  S.I. ¶ 37.[4]  This does nothing to apprise Mr. Ding of: (1) the actual documents falling within this category; (2) the portions of such documents which the government asserts are trade secrets; or (3) the total number of trade secrets in this category.  This threadbare, categorical approach to identifying trade secrets is almost universally rejected in both criminal and civil cases.

For example, in _United States v. Case_, the court found an indictment deficient where it merely described the allegedly misappropriated trade secrets as "technology related to the design specifications, manufacture and sale of military and commercial aviation hydraulics products[.]" No. 3:06-CR-210-TSL (LRA), 2007 WL 1746399, at *1 (S.D. Miss. June 15, 2007).  In that case, the court found that the government's categorization was unconstitutionally vague because it failed to identify which portions, components and/or information therein was specifically being asserted as trade secrets.  _Id._ at *4.  The court also expressed grave concern that, by failing to identify the asserted trade secrets with particularity, the government would be able to assert additional trade secrets as the trial neared:

> Also of concern to the court is the fact that the government has purported to reserve for itself the right to designate, at a later date, additional trade secrets which the defendants have allegedly stolen or copied. As defendants point out, the matters which were presented to the grand jury and purportedly relied on by the grand jury in returning this indictment should be fixed in time and not

---

[3] For the Court's convenience, a copy of this Order has been attached as Ex. G to the Fondo Decl.
[4] To make matters worse, the categories of trade secrets touch on nearly all elements of Google's supercomputing data centers: TPU hardware and software, GPU hardware and software, cluster management software, and more.

8

subject to addition.

*Id.* at *4 n.4.  These concerns are most certainly present here as well, as the government has doubled the files noted in the charging document, from 500 to 1,000+, designated 4,400+ documents and 43,500+ pages as confidential, and continues to produce additional "Confidential" documents and expand its theories of trade secrets.

Similarly, in *United States v. United Microelectronics Corporation*, the indictment included broad categories of purported trade secrets in a nearly identical manner to that found in the instant Superseding Indictment.  *See generally*, Indictment, *United States v. United Microelectronics Corp.*, No. 3:18-cr-00465-MMC (N.D. Cal. Sept. 27, 2018), Dkt. 1.  The *United Microelectronics* court rejected this approach, not only ordering the government to identify the purported trade secrets with particularity but also ordering the government to specifically identify each individual component of a compilation or combination trade secret that the government intended to rely on, including by identifying the places within each document such trade secreted is located:

> To the extent [defendant] requests an order requiring the
> government to provide a bill of particulars identifying not only any
> trade secret the government asserts to be a compilation or
> combination but also identifying (including, if contained in a
> document, the place therein in which it can be found) any
> component thereof the government asserts is itself a trade secret on
> which the government intends to rely to establish [defendant]'s
> guilt, the motion is GRANTED.

UMC Order.  This is the same relief that Mr. Ding is seeking.  Only then would he have Constitutionally proper notice of the charges against him.

In *United States v. Richardson*, the District Court for the Northern District of Illinois rejected the government's similarly "general and conclusory" descriptions of the trade secrets at issue in that case, noting that the government "declined to identify which documents among the several thousand produced are the purported stolen property that is the subject of the indictment." No. 90 CR 345, 1990 WL 70335, at *1 (N.D. Ill. May 14, 1990).  The *Richardson* court reasoned that "[b]y contrast, in cases involving interstate transportation of stolen securities or automobiles, indictments routinely include information explicitly identifying the stolen items."  *Id.*  Thus,

9

"[t]here is no principled reason charges involving allegedly stolen intellectual property should be held to a lower standard of disclosure" and "generic descriptions" of the trade secrets at issue simply "do not suffice." *Id.* The same should be found here.

The Superseding Indictment's identification of trade secrets also falls well short of the analogous standard in *civil* actions in this District, which explicitly rejects the categorical approach utilized in the Superseding Indictment and where there is no Sixth Amendment implication. Under the civil standard, a trade secret plaintiff "may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (citations omitted) ("It is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information."); *see Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *5 (N.D. Cal. Jan. 10, 2019) (requiring a trade secret plaintiff to "state and . . . identify [the trade secret] compositions in a manner that distinguishes them from what is already known"); *see also Myrio Corp. v. Minerva Network, Inc.*, No. C 00-20996 RMW(PVT), 2001 U.S. Dist. LEXIS 10461, at *2-3 (N.D. Cal. Apr. 4, 2001) (requiring a trade secret plaintiff to "specify precisely which portions of the document describes the trade secret(s)"). Mr. Ding should be afforded at least the same level of notice as civil litigants. *See* U.S. CONST. amend. XIV.

### 2. The Government's Supplemental List of "Example" Trade Secrets Does Not Adequately Identify the Trade Secrets at Issue and Cannot Salvage the Facially Deficient Superseding Indictment.

Perhaps realizing the deficiency of the Superseding Indictment's identification of trade secrets, the government provided a list of 108 unique filenames of "example" trade secrets for each category. However, this list does little to clear up the trade secrets at issue, since it does not identify which portions or components of the 2,473 cited pages are purported trade secrets, nor does the list offer any insight into which other of the 4,400+ "Confidential" documents comprise or contain trade secrets.

Unsurprisingly, in *United States v. Liang Chen*, the Northern District rejected this exact practice, finding that the government could not salvage its facially deficient indictment by

10

providing the defendant with a "non-exhaustive list" of "examples of the charged trade secrets along with the Bates stamp numbers and/or file paths for each example." 2020 WL 6342931, at *5.[5] In that case, the government alleged that the defendants misappropriated CAD drawings and Bills of Materials files depicting Applied Materials, Inc.'s ("Applied") proprietary Metal Organic Chemical Vapor Deposition semiconductor manufacturing process. *See id.* at *1. The operative indictment included a chart listing the eleven asserted trade secrets, specific ID numbers that corresponded to the location of the relevant CAD drawings in Applied's database, an Applied part number each trade secret corresponded to, and a short description of each trade secret. *See id.* The government then provided defendants with a series of letters that "include[d] examples of the charged trade secrets along with the Bates stamp numbers and/or file paths for each example." *Id.* at *5. Despite this purported level of detail, the *Liang Chen* court ultimately held that the government did "not identify the alleged trade secrets with particularity but rather direct[ed] the Defendants to a universe of information that contain[ed] the alleged trade secrets," leading to serious concerns about adequate notice and warranting the production of a bill of particulars. *Id.* The court agreed with defendants, in that the government's "non-exhaustive list of trade secrets" created an "uncertain and shifting landscape" which "impair[ed] [defendants'] ability to prepare for trial." *Id.* These exact concerns are shared by Mr. Ding at present, especially given that the government has greatly expanded rather than reduced the scope of trade secrets at issue and has refused to provide further identification of the purported trade secrets. A bill of particulars is similarly warranted here.

### 3. Further Specificity is Particularly Warranted Due to the Government's Voluminous Discovery and Overbroad Designations.

The government's voluminous production of more than 4,400 "Confidential" documents, totaling 43,500+ pages, further obfuscates the trade secrets at issue and warrants a bill of particulars to provide Mr. Ding proper and adequate notice of the charges against him. It is well established that "overwhelming discovery may necessitate a bill of particulars because the volume of material

---

[5] The government's supplemental list in question here is even more sparse and threadbare than the list found to be deficient in *Liang Chen*, providing no bates numbers at all. *See* Ex. B.

may be such that defendants will be unable to focus their investigation toward particular facts and circumstances in order to be prepared for trial." *United States v. Salyer*, No. CR-S-10-0061 LKK (GGH), 2011 WL 6026119, at *2 (E.D. Cal. Dec. 2, 2011).  Here, the government has refused to delineate which of these 4,400+ documents it contends comprises or contains trade secrets versus those that are otherwise generally confidential, nor identify the pages therein.  These 4,400+ documents amount to over 43,500 pages, much of which is filled with dense and complex technical-appearing text.  Mr. Ding simply has no way to identify which needles in this discovery haystack are being asserted as trade secrets, further warranting a bill of particulars.  *See United States v. Chen*, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006) (ordering bill of particulars on the basis that "[t]he Court is not persuaded by the government's assertion that the indictment, combined with a search through the extremely voluminous and diverse discovery produced in this case, will sufficiently apprise [the defendant] of the charge against him . . .").

    *United States v. Ward* is instructive.  No. CR-11-2123 RMP (E.D. Wash.).[6]  In that case, the government produced a bill of particulars identifying the trade secrets at issue as a "Integrator Aircraft Maintenance Manual and its contents."   Order Re: Sufficiency of Bill of Particulars & Granting in Part Government's Mot. to Supplement the Record at 5, *United States v. Ward*, No. CR-11-2123 RMP (E.D. Wash. June 21, 2012), Dkt. 175 The court, however, found this identification to be deficient, given the sheer volume of the manual:

> Two of the purposes of a bill of particulars are to avoid surprise and to allow the defendant to prepare for trial.  *Giese*, 597 F.2d at 1180.  The manual is voluminous, and from the Government's statement in its bill of particulars it must be concluded that each page of the manual could contain one or more possible trade secrets. ***This places the Defendant in the position of having to guess which portions of the manual will be the subject of the Government's case-in-chief or to prepare to argue and refute evidence that each sentence or diagram contained in the manual is not generally known or readily discernible by the public.***  As a result, the Government's disclosure in its bill of particulars does little to avoid the risk of surprise or to allow the Defendant to prepare his defense.

*Id.* at 5-6 (emphasis added).  Mr. Ding's scenario is even more extreme.  Instead of identifying a single voluminous document in which the trade secrets could be found, the government here is

---

[6] For the Court's convenience, a copy of this Order has been attached as Ex. H to the Fondo Decl.

essentially pointing to a population of 4,400+ voluminous confidential documents, totaling over 43,500 pages, which could contain or comprise the trade secrets.  Further, just as the *Ward* court found, Mr. Ding has no way to determine whether the government contends each entire document comprises a single trade secret or only portions thereof.  Therefore, the government must produce a bill of particulars, not only identifying which documents contain trade secrets but further identifying which particular portions and components thereof the government intends to argue are trade secrets:

> In order to meet its obligation in producing a bill of particulars, the Government must disclose those "instructions, descriptions, diagrams, and schedules," or any other sub-parts of the manual, specifically, either by page and paragraph numbers or by chapter or subchapter headings, that the Government intends to argue are trade secrets.  If the Government is contending that the entire manual constitutes one trade secret, then the Government is on notice that the Court's present understanding of the law would compel instructing the jury that should any part of the manual be public, and therefore not a trade secret, then the manual as a whole cannot constitute a trade secret.  *See* 18 U.S.C. § 1839(3)(B).

*Id.* at 6.

### 4.    The Deficient Identification of Trade Secrets Materially Prejudices Mr. Ding's Ability to Prepare for Trial and Creates an Undue Risk of Surprise.

Without a bill of particulars, Mr. Ding will be forced to continue guessing which of the 4,400+ documents and portions thereof in the 43,500+ pages of "Confidential" documents will be asserted as trade secrets at trial, while the government is permitted to hide the ball and continuously shift its theories of its case over time.[7]  Surely Google, and the government, are not asserting all 4,400+ documents and all 43,500+ pages are trade secrets, nor is the government going to try to prove as much at trial.  While the government may find it advantageous to keep a criminal defendant still guessing a year after the indictment and through trial—particularly in a complex case like this, involving sophisticated technology, thousands of documents, and terabytes of data— it is not "fair notice" to force the defense to burn precious resources plowing through and analyzing material the

---

[7] Indeed, the government has already done as much, ballooning the number of Confidential Google Documents Mr. Ding is accused of uploading  from 500 in the original Indictment to 1,000 in the Superseding Indictment, and expanding the number of categories of trade secrets from four to seven, respectively.  *Compare* Dkt. 1 and Dkt. 44.

government has no intention of claiming at trial was a stolen.  Rather, the government is not only this violating the Constitutional principle that a defendant be fairly informed of the charges against him, but is also materially prejudicing and hamstringing Mr. Ding's ability to build his defenses and prepare for trial.  *See United States v. Trumpower*, 546 F. Supp. 2d 849, 851-52 (E.D. Cal. 2008) (ordering bill of particulars where indictment plead factual background for mail and wire fraud charges "in completely generic terms" and holding that "without more information [the defendant] is unable to adequately prepare for trial and there is an undue risk of surprise"); *see also United States v. Liang Chen*, No. 17-CR-00603-BLF-1, 2020 WL 6342931, at *5 (N.D. Cal. Oct. 29, 2020) (granting motion for bill of particulars and agreeing with defendant that the "uncertain and shifting landscape" caused by the government's non-exhaustive list of example trade secrets "impairs their ability to prepare for trial").  Mr. Ding must be afforded a fair opportunity to assess and, if warranted, rebut the government's purported trade secrets—a right that is afforded to all civil trade secret defendants.  *See, e.g.*, *InteliClear*, 978 F.3d at 658 ("Identifying trade secrets with sufficient particularity is important because defendants need 'concrete identification' to prepare a rebuttal."); *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, at *2 (N.D. Cal. May 31, 2018) (citation omitted) (adequate trade secret identification is necessary to "enable[] defendants to form complete and well-reasoned defenses"); *Coast Hematology-Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Med. Ctr.*, 58 Cal. App. 5th 748, 759 (2020) (citation omitted) ("A key issue in a trade secret case is whether the trade secret is truly secret, or instead whether it is 'generally known.'  Neither the defendant nor the court can tackle this issue sensibly without a reasonably particular definition of the putative trade secret.").

This case is one year old, and the government has both superseded its indictment and doubled its number of unique files.  Clearly, the government knows what it is focused on, and it certainly is not going to present 4,400+ trade secrets at trial or assert that all 43,500+ pages containing stolen trade secrets.  Therefore, it should be required to stop moving the playing field and identify the actual trade secrets that are at issue in this case and, in particular, that will be at issue at trial.  The government's deficient identification of trade secrets deprives Mr. Ding of this

opportunity and a bill of particulars is therefore necessary.

**B.      The Government Must Provide A Bill of Particulars For the Economic Espionage Act Charges.**

The Superseding Indictment further fails to allege entire elements of the EEA claims against Mr. Ding and, where it does, it offers nothing more than vague, conclusory allegations.  As such, the Superseding Indictment does not afford Mr. Ding of proper notice of the charges against him and a bill of particulars is warranted here as well.

Under 18 U.S.C. § 1831, economic espionage may be found where an individual knowingly commits certain offenses involving misappropriated trade secrets "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent."  *Id.*  As discussed above, the Superseding Indictment fails to adequately identify the purported trade secrets at issue, so the EEA claim too is facially deficient on that ground.

The Superseding Indictment also fails to articulate any non-conclusory allegations regarding the intent element—*i.e.*, that Mr. Ding "intend[ed] or kn[ew] that the offense will benefit any foreign government, foreign instrumentality, or foreign agent."  *Id.*  At most, the Superseding Indictment alleges that a startup associated with Mr. Ding, Zhisuan, quoted from a PRC policy in an investor presentation, claimed to have internationally-competitive computing power, and had tentative plans to seek funding from unidentified entities with purported ties to the PRC.  S.I. ¶¶ 24-26.

Notably, however, the Superseding Indictment: (1) does not identify *any* of the "multiple PRC-controlled entities" Zhisuan allegedly intended to market itself to and provide services to (*id.* ¶ 26); (2) does not offer any theory or description of how those unidentified entities were "controlled" or connected to the PRC; and (3) does indicate whether such alleged relationships with these purported PRC-controlled entities forms the basis, in whole or in part, of the government's EEA charges.  *See id.*

The lack of even the most basic factual allegations here makes it impossible for Mr. Ding to be apprised of the government's charges and prepare his defenses.  Simply put, Mr. Ding is

1  entitled to know the names of any of these purported "PRC-controlled entities" the government

2  asserts that he intended to benefit and the ties to the PRC the government is alleging.  As with the

3  trade secrets in question, Mr. Ding should not be forced to play a guessing game while the

4  government is allowed to evolve and change its theories all the way through trial.  *See United States*

5  *v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *9 (N.D. Cal. Feb. 11, 2020) ("[A]

6  defendant should not be forced to prepare unnecessary defenses" and "should not have to guess

7  about what [facts] he will have to defend against.") (citations omitted).  As such, a bill of particulars

8  is needed.

9  **V.   CONCLUSION.**

10      For the foregoing reasons, Mr. Ding respectfully requests that the Court grant this instant

11  Motion and order the government to produce a bill of particulars (1) identifying with particularity

12  the trade secrets it intends to rely on to prove that Mr. Ding violated 18 U.S.C. § 1832, and

13  (2) identifying with particularity any foreign government instrumentalities or agents the

14  government asserts that Mr. Ding intended to benefit in violation of 18 U.S.C. § 1831.

15

16  Dated: February 25, 2025          Respectfully submitted,

17              GOODWIN PROCTER LLP

18              By:  */s/ Grant P. Fondo*
            DARRYL M. WOO (SBN 100513)

19              *DWoo@goodwinlaw.com*
            GRANT P. FONDO (SBN 181530)

20              *GFondo@goodwinlaw.com*
            JESSICA H. FUZELLIER (SBN 315208)

21              *JHFuzellier@goodwinlaw.com*
            FARZAD FEYZI (SBN 343538)

22              *FFeyzi@goodwinlaw.com*
            DAVID RAPP-KIRSHNER (SBN 344494)

23              *DRappKirshner@goodwinlaw.com*
            NIRAV BHARDWAJ (SBN 350829)

24              *NBhardwaj@goodwinlaw.com*
            **GOODWIN PROCTER LLP**

25

26              Attorneys for Defendant
            LINWEI DING

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2   I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3 United States District Court for the Northern District of California by using the CM/ECF system

4 on **February 25, 2025**. I further certify that all participants in the case are registered CM/ ECF

5 users and that service will be accomplished by the CM/ECF system.

6   I certify under penalty of perjury that the foregoing is true and correct. Executed on

7 **February 25, 2025**.

8

9              */s/ Grant P. Fondo*
                Grant P. Fondo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1