GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant
LINWEI DING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>LINWEI DING,<br><br>            Defendant. | Case No.  3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       April 2, 2025<br>Time:      1:00 p.m.<br>Courtroom: 4 (17th Floor)<br>Judge:    Hon. Vince Chhabria<br>              450 Golden Gate Avenue<br>              San Francisco, CA 94102 |

<u>**NOTICE OF MOTION & MOTION TO DISMISS**</u>

**TO THE COURT AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 2, 2025, at 1:00 p.m. or as soon thereafter as the matter may be heard at a time set by The Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Linwei Ding ("Mr. Ding"), will move this Court for an order to dismiss Counts 8 through 14 (Economic Espionage) of the Superseding Indictment (Dkt. 44) under Federal Rule of Criminal Procedure 12.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers filed in this matter, and on other such arguments or evidence as the Court shall deem proper.

Dated: March 4, 2025

Respectfully submitted,

GOODWIN PROCTER LLP

By: */s/* Grant P. Fondo
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*

Attorneys for Defendant
LINWEI DING

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         This case is, at most, about the alleged improper acquisition of trade secrets. The

4    government's attempts to allege that the Defendant, Linwei Ding ("Mr. Ding"), violated the

5    Economic Espionage Act (18 U.S.C. § 1831, "EEA") on behalf of the People's Republic of China

6    ("PRC") fall well short of the required pleading standards.

7         In particular, the Superseding Indictment fails to allege (1) that any "benefit" to a foreign

8    governmental entity was intended, or that Mr. Ding ever handed over or otherwise conveyed any

9    of the allegedly stolen trade secrets to a foreign governmental entity; (2) that Mr. Ding had the

10   requisite *mens rea* of intending or knowing that his actions would benefit any foreign government

11   or instrumentality; (3) that any of the entities referenced in the Superseding Indictment qualify as

12   a foreign government, agent, or instrumentality as defined by the EEA; or (4) that any "foreign

13   government sponsored or coordinated" Mr. Ding's alleged activity.

14        The government's case is built on the speculative allegation that Mr. Ding stole trade secrets

15   for the purpose of developing a startup in the PRC and seeking investors there and, therefore, did

16   so for the benefit of the Chinese government.  As shown below, even assuming the truth of the

17   government's allegations and providing the benefit of reasonable inferences therefrom, the

18   government fails to state a claim under the EEA, and Counts 8 through 14 of the Superseding

19   Indictment should be dismissed.

20   **II.    RELEVANT BACKGROUND**

21        The government filed its original indictment against Mr. Ding on March 5, 2024, alleging

22   that Mr. Ding criminally misappropriated broad, unspecified categories of documents from his

23   former employer, Google, pertaining to TPU and GPU chip architecture, software, and hardware

24   related to Artificial Intelligence ("AI").  Indictment (Dkt. 1) ¶¶ 31–32.  Almost a year later, on

25   February 4, 2025, the government filed a superseding indictment, broadening its case to seven

26   counts of misappropriation of trade secrets and adding seven parallel counts of economic espionage.

27   Superseding Indictment ("S.I.") (Dkt. 44) ¶¶ 35–46.

28        Mr. Ding is alleged to have taken 1,000-plus files containing purported trade secrets relating

1

to Google's "supercomputing data centers" and uploaded this information to his personal Google drive. S.I. ¶¶ 16–17. During the course of approximately a year, from 2022 to 2023, Mr. Ding allegedly became affiliated with two tech companies based in the PRC: first, participating in investor meetings to raise capital for Rongshu Lianzhi Technology Co., Ltd. ("Rongshu"), and later attempting to raise funds for his own startup, Shanghai Zhisuan Technology Co. Ltd. ("Zhisuan"). *Id.* at ¶¶ 18–21.

In support of its EEA charges, the government alleges that Mr. Ding knowingly and without authorization obtained and exfiltrated trade secrets he purportedly obtained from Google, intending or knowing that the offense would benefit a foreign government, foreign instrumentality, or foreign agent. S.I. ¶ 46 (Counts 8 through 14). The government's theory is that Mr. Ding affiliated himself with AI industry companies based in the PRC while he was exfiltrating Google's trade secrets to his Google drive. *Id.* ¶¶ 17–23. The government's allegations, however, relate to his working for and starting AI businesses in China, and seeking investments in these two business, and not intending to benefit the PRC government and its instrumentalities.

## III.    LEGAL STANDARD

An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged (Fed. R. Crim. P. 7(c)(1)) and "must directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished" (*Hamling v. United States*, 418 U.S. 87, 117 (1974)). Where the sufficiency of an indictment is in question, a party may move to dismiss under Rule 12(b) of the Federal Rules of Criminal Procedure. An indictment will only withstand a motion to dismiss:

> if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge.

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (citation and internal quotation marks omitted). "When making such determination, the court is limited to the face of the indictment and must presume the truth of the allegations in the charging instrument." *United States v. Harkonen*, No. C 08-00164 MHP, 2009 WL 1578712, at *3 (N.D. Cal. June 4, 2009). However, "[t]he court

2

must do more than accept the government's legal conclusions and must test the indictment by its sufficiency to charge an offense." *Id.*, citing *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002).

## IV.    ARGUMENT

The Superseding Indictment fails to allege facts supporting all elements for a charge of Economic Espionage.  The EEA, codified at 18 U.S.C. § 1831, makes it a crime for:

> [w]hoever, ***intending or knowing*** that the offense will ***benefit*** any ***foreign government, foreign instrumentality, or foreign agent***, knowingly . . . (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret; [or] (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

18 U.S.C. § 1831(1)–(3) (emphasis added).  It is well-settled that liability under Section 1831 is *not* met by a defendant's dealing with a corporation that happens to be based in a foreign country; instead, it requires the involvement of a foreign *governmental* instrumentality or agent.  *See United States v. Lan Lee*, No. CR 06-0424 JW, 2010 WL 8696087, at *6 (N.D. Cal. May 21, 2010) (a "foreign government, instrumentalities or agent" is *not* synonymous with benefitting a "foreign country" or a "foreign corporation.").

There are only four allegations in the Superseding Indictment that seek to establish that Mr. Ding acted intending to benefit the PRC government and its instrumentalities:

- Allegedly after pitching to investors at startup incubator MiraclePlus's venture capital investor conference in Beijing, Mr. Ding circulated a document to members of a Zhisuan WeChat group, stating in part, "we have experience with Google's ten-thousand-card computational power platform; we just need to replicate it and upgrade it—and then further develop a computational power platform suited to China's national conditions." S.I. ¶ 22 (hereinafter referred to as the "WeChat Document").

- Allegedly circulating a PowerPoint presentation to Zhisuan employees and potential investors which pointed to the PRC State Council's 2017 "Notice on the Development of the New Generation of Artificial Intelligence," calling for the development of high-performance computing infrastructure; and citing a policy document published and sponsored by PRC government agencies, which "Encourage[d] independent innovation in basic technologies such as generative ratification intelligence algorithms, chips, and supporting software platforms."  S.I. ¶ 24 (hereinafter referred to as the "Zhisuan PowerPoint").

- Allegedly applying to a Shanghai-based talent program, stating that his product "will help China to have computing power infrastructure capabilities that are on par with the international level." S.I. ¶ 25 (hereinafter referred to as the "Talent Application"). The government alleges that talent programs are sponsored by the PRC, and "incentivize individuals engaged in research and development outside of the PRC to transmit that knowledge and research to the PRC in exchange for salaries, research funds, lab space, or other incentives." *Id.*

- An internal Zhisuan memo allegedly "indicate[d]" that Zhisuan "intended to market itself to and provide services to multiple PRC-controlled entities, including government agencies and universities." S.I. ¶ 26 (hereinafter referred to as the "Zhisuan Memo"). The Superseding Indictment does not identify who these PRC-controlled entities are.

Each of these allegations, apart or collectively, falls short of pleading (1) that any "benefit" to a foreign governmental entity was intended; (2) that Mr. Ding had the requisite *mens rea* of intending or knowing that his actions would benefit any foreign government or instrumentality; (3) that any of the relevant entities qualify as a foreign government, agent, or instrumentality as defined by the EEA; or (4) that any "foreign government sponsored or coordinated" Mr. Ding's alleged activity.

### A.      The Superseding Indictment Fails To Allege Any Intent To "Benefit" The PRC.

The Superseding Indictment lacks any allegations that the PRC was intended to benefit from Mr. Ding's alleged misappropriation of trade secrets. Courts in this District have interpreted "benefit" in Section 1831 as "refer[ring] to the benefits ordinarily associated with "espionage," *i.e.*, "gaining access to the stolen information." *Lan Lee*, 2010 WL 8696087, at *5. Inherent to espionage is that the information is intended to or is *turned over* to the foreign government or its agent. *Id.*, at *6.

The text, context, and structure of the EEA all indicate that "benefit" is limited to the direct and tangible benefit of gaining access to and using stolen trade secrets. The plain meaning of "benefit" is "[t]he advantage or privilege something gives; the helpful or useful effect something has." *Benefit*, Black's Law Dictionary (12th ed. 2024). In this case, the EEA is trained on the beneficial effect of a *trade secret*. That benefit provided by a trade secret is access to or use of a trade secret.

The title of Section 1831 is "economic espionage," and both the terms "economic" and

4

1   "espionage" are critical to understanding the meaning of "benefit." The "benefit" referred to by

2   the EEA must be that which pertains to espionage, and specifically to *economic* espionage. The

3   term "economic" signals that the benefit must, at the very least, be a direct and tangible benefit.

4   Considering the text as a whole, therefore, the "benefit" provided by a "trade secret" stolen for

5   "economic espionage" means the benefit of access to or use of that trade secret by a foreign

6   government.

7         The structure and context of the EEA also support a narrow reading of "benefit." The EEA

8   included two substantive crimes: economic espionage (§ 1831) and theft of trade secrets (§ 1832).

9   Section 1832 is narrowly focused on the *commercial* theft of trade secrets because Section 1832

10  requires an "economic benefit." *See United States v. Liew*, 856 F.3d 585, 597 (9th Cir. 2017).

11  Section 1831 must be read in that context, too, under the *noscitur a sociis* canon of statutory

12  interpretation. Section 1831 therefore requires (at the very least) a direct and tangible benefit from

13  the access to or use of trade secrets, even if "benefit" under Section 1831 is not limited to an

14  "economic" benefit. There are no allegations that any information associated with espionage, *i.e.*,

15  that the trade secrets that Mr. Ding purportedly took from Google, was intended to be or was "turned

16  over" to the PRC or its instrumentalities or agents. The WeChat Document is not alleged to have

17  contained any misappropriated information; only a statement that Zhisuan has experience with

18  Google's computational power platform and that it could develop an upgraded one. S.I. ¶ 22.

19  Likewise, the Zhisuan PowerPoint allegedly merely cited to PRC-published documents. *Id.* ¶ 24.

20  And the quotation in one of those PRC-published documents of encouraging "innovation" is a far

21  cry from the kind of direct and tangible benefit contemplated by the EEA. Furthermore, the Talent

22  Application is only alleged to state Zhisuan's product's purpose, which was to help China have a

23  "computing power infrastructure capabilities that are on par with the international level," without

24  detailing how Zhisuan was going to do so, or using what information, knowledge, or expertise. *Id.*

25  ¶ 25. Moreover this allegation is nothing more than an "intent to bestow benefits on the economy

26  of a country" which is *not* a crime. *Lan Lee*, 2010 WL 8696087, at *6. Similarly, even under the

27  government's reading of the Zhisuan Memo, it only generally "indicates" what Zhisuan's target

28  market is (S.I. ¶ 26) and the Superseding Indictment fails to allege that Mr. Ding intended to turn

5

1    over any stolen information to a foreign government or its agent or instrumentality.

2            At best, the Superseding Indictment only alleges benefits to Mr. Ding personally, or to his

3    startup, as all of the alleged statements he and/or Zhisuan made were in pursuit of capital

4    investment.  But Section 1831 "does not penalize a defendant's intent to personally benefit or an

5    intent to bestow benefits on the economy of a country that might be realized from operating a

6    company in a foreign country."  *Lan Lee*, 2010 WL 8696087, at *6.  And such downstream effects

7    on a national economy are not sufficiently direct and tangible benefits from the acquisition or use

8    of a trade secret to fall under the ambit of the term "benefit" in the EEA.

9            **B.    The Superseding Indictment Fails To Allege That Mr. Ding Acted Intending**
10           **Or Knowing That His Actions Would Benefit The PRC Government**

11           The Superseding Indictment also must be dismissed for the separate and independent reason

12   that it fails to allege that Mr. Ding had the required *mens rea* of intent or knowledge.

13           The Superseding Indictment fails to allege that Mr. Ding acted intending or knowing that

14   the offense (of stealing trade secrets) will benefit any foreign government, instrumentality or agent.

15   **<u>In fact, the Superseding Indictment does not allege that Mr. Ding intended to use or disclose</u>**

16   **<u>the trade secrets to the PRC at all.</u>**  All that is alleged is that Zhisuan cited to a PRC policy in a

17   presentation, stated that it sought to create internationally competitive computing power, and

18   drafted a memorandum (which Mr. Ding is not alleged to have contributed to) indicating that it

19   intended to (but did not actually) market itself to unidentified "PRC-controlled entities." S.I. ¶¶ 24–

20   26.  Crucially, however, the government does not allege that Zhisuan intended to use—or even

21   possess—the purported trade secrets.  This falls far short of alleging that Mr. Ding "acted intending

22   to turn over possession of the trade secret[s] to or to use the trade secret[s] on behalf or for the benefit

23   of an agent or instrumentality of the PRC."  *Lan Lee*, 2010 WL 8696087, at *7.

24           Cases decided in this district where an "intent to benefit" a foreign government,

25   instrumentality, or agency is sufficiently pled are instructive.  For example, in *United States v.*

26   *Chung*, the defendant allegedly explicitly sought to exfiltrate trade secrets from his employers at

27   the request and behest of PRC officials and agents.  *See Chung*, No. SA CR 08-00024 (C.D. Cal.

28   Feb. 6, 2008), Indictment (Dkt. 1) ¶ 22.  He corresponded directly with PRC officials who provided

him with requests and lists of desired information, and the information that the defendant was ultimately found to possess matched such lists. *Id.* ¶¶ 22–23. The PRC officials also instructed the defendants as to how precisely to exfiltrate and transport the purported trade secrets, and organized his travel to and from the PRC. *Id.* Similarly, in *United States v. Liew*, the indictment contained numerous allegations showcasing defendants' intent, including that defendants "executed contracts with state-owned entities in the PRC . . . that relied on the transfer of illegally obtained DuPont technology," "provided [the foreign instrumentality] with numerous photographs of DuPont facilities, which revealed proprietary and confidential aspects of the manufacturing process," and consistently "represented . . . that they possessed DuPont technology." *See Liew*, No. CR 11-00573-1 JSW (N.D. Cal. Mar. 12, 2013), Second Superseding Indictment (Dkt. 269) ¶¶ 20, 22, 24–25.

        In contrast, no allegations similarly demonstrating intent and knowledge by Mr. Ding to benefit the PRC government exist. In fact, the Superseding Indictment does not contain a single allegation that Mr. Ding had any intent to transfer or disclose any purported trade secret to a single person or entity affiliated with the PRC. Mr. Ding is not alleged to have executed contracts with the PRC government to exchange trade secrets for money, nor to have communicated directly with PRC government officials or agents, or to have provided the purportedly exfiltrated trade secrets to the PRC government, or even to have represented to the PRC government or its instrumentalities or agents that he possessed the trade secrets.

### C.    The Superseding Indictment Fails to Allege that Mr. Ding Intended to Benefit an Entity That Qualifies as a Foreign Government, Instrumentality, or Agent.

        The Superseding Indictment lacks any allegations that Mr. Ding intended to benefit an entity that qualifies as a foreign government, instrumentality, or agent.

        A "foreign government" has been interpreted in this district to mean "the entity that constitutes the governing body of any foreign country." *Lan Lee*, 2010 WL 8696087, at *6. A "foreign instrumentality" means "any agency, bureau, ministry, component, institution, association, or any legal, commercial, or business organization, corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign

government," and a "foreign agent" is any officer, employee, proxy, servant, delegate, or representative of a foreign government." 18 U.S.C. § 1839.

The Government may not rely on conclusory statements that the entities Mr. Ding allegedly intended to benefit are foreign agents or instrumentalities. And the factual allegations in the superseding indictment do just that—rely on conclusory statements—and fall far short.

First, none of the purportedly PRC-based entities Mr. Ding allegedly affiliated with are a foreign government, instrumentality, or agent as contemplated in Section 1831. None of the entities of Rongshu, Zhisuan, or MiraclePlus are alleged to be governmental entities. Rongshu is an "early-stage technology company," Zhisuan is a "startup company," and MiraclePlus is a "startup incubation program." S.I. ¶¶ 18, 21, 22. And the Shanghai-based "talent program" is simply referred to as a "talent program." *Id.* ¶ 25. Simply alleging that these entities are PRC-based or located in the PRC is insufficient to make the required connection between the entities and the PRC government.

Second, there are no allegations to suggest that any of these entities are "substantially owned, controlled, sponsored, commanded, managed, or dominated by" the PRC government. *See United States v. Pangang Group Co., Ltd.*, 6 F.4th 946, 960 (9th Cir. 2021) (EEA's definition of "foreign instrumentality" requires a company to be "*substantially* owned" or "*controlled*" by the foreign government (emphasis in original)); *see also United States v. You*, 74 F.4th 378, 396 (6th Cir. 2023) (a private company is a foreign instrumentality where it is "substantially controlled and sponsored by the Chinese government").

Similarly, none of the entities in the Superseding Indictment are alleged to be subject to substantial ownership, control, sponsorship, or the like by the PRC government. The Superseding Indictment does not even attempt to address this element for Rongshu, Zhisuan, or MiraclePlus. On the contrary, the allegation that Zhisuan "intended to market itself to and provide services to multiple PRC-controlled entities, including government entities and universities" (S.I. ¶ 26) can only be reasonably interpreted as Zhisuan was an entity with free agency to choose who to work with, and was *not* owned, controlled, sponsored, commanded, managed, dominated, or was a representative of the PRC government. And the Superseding Indictment merely alleges, in

8

conclusory and overly-broad fashion, that "talent programs" are "sponsored" by the PRC (S.I. ¶ 25), but there are no allegations as to whether the talent programs at issue were sponsored by the PRC or that this sponsorship was "*substantial*," as required by Section 1831.

   **D.    The Superseding Indictment Fails To Allege Foreign Government Sponsored Or Coordinated Intelligence Activity.**

   The Superseding Indictment also lacks any allegations that the PRC sponsored or coordinated Mr. Ding alleged activity.  Under binding Ninth Circuit law, Section 1831 applies "when there is evidence of foreign government sponsored or coordinated intelligence activity." *Liew*, 856 F.3d at 597.  This is consistent with the legislative history of Section 1831, which, prior to enactment, was commonly described as covering "foreign-government-sponsored economic espionage."  Legislative History—Economic Espionage Act of 1996, Congressional Record— Senate Proceedings and Debates of the 104th Congress, Second Session, October 2, 1996; *see also United States v. Hsu,* 155 F.3d 189 (3rd Cir. 1998) ("The legislative history indicates that § 1831 is designed to apply only when there is evidence of foreign government sponsored or coordinated intelligence activity.") (citing 142 Cong. Rec. S12,212 (daily ed. Oct. 2, 1996) (Managers' Statement for H.R. 3723)) (internal quotation marks omitted).  The Superseding Indictment is inadequate because the government simply alleges that Mr. Ding "intend[ed] or [knew] that the offense would benefit any foreign government, foreign instrumentality, or foreign agent," (S.I. ¶ 46) but does not allege any foreign governmental *involvement* in the offense.

   The government's inclusion of Economic Espionage allegations in the Superseding Indictment (but not the initial indictment) likely hinges on its reliance on the Second Circuit's decision in *United States v. Zheng*, 113 F.4th 280 (2d Cir. 2024), decided a few months before the Superseding Indictment was filed, which held that Section 1831 liability can be based on the defendant's intent or knowledge that his misappropriation of a trade secret will benefit a foreign government or instrumentality, and that "there is nothing in § 1831(a) that requires proof of a foreign government's involvement in the defendant's conduct."  *Id.* at 292.  But *Zheng* is an out of circuit case that conflicts with binding Ninth Circuit case law, so this Court should decline to apply it.  In this Circuit, the government is required to plead *both* intent of the defendant *and* involvement

9

1   by a foreign government.  *See, e.g.*, *Liew*, 856 F.3d 585, 597 (9th Cir. 2017) ("§ 1831 is designed

2   to apply only when there is evidence of foreign government sponsored or coordinated intelligence

3   activity"), citing *United States v. Hsu*, 155 F.3d 189, 195–96 (3d Cir. 1998); *see also* Ninth Cir.

4   Manual of Model Crim. Jury Inst., Comment to 23.14 Economic Espionage (18 U.S.C. § 1831) rev.

5   June 2021 (directing use of this instruction "when there is evidence of foreign government

6   sponsored or coordinated intelligence activity" involving "any manner of benefit"); *see also Liew*,

7   2013 WL 2605126, at *2 (N.D. Cal. June 11, 2013) ("By its terms, a violation of Section 1831

8   requires some evidence of foreign governmental *involvement*" (emphasis added)).

9       The lack of factual allegations to demonstrate the PRC government's involvement with

10  Mr. Ding or the alleged offense of exfiltrating Google's trade secrets is stark when compared with

11  the alleged activities of other defendants indicted under Section 1831.  In *Chung*, for example, the

12  defendant allegedly communicated extensively directly with PRC government officials, was sent

13  requests and tasks lists by PRC officials detailing precisely what information they wanted defendant

14  to exfiltrate, was directed by PRC officials on how to transport the exfiltrated officials to a Chinese

15  agent, was told by PRC officials and agents that he would be paid for his efforts, and had his travel

16  to and from the PRC organized by PRC agents and the PRC Ministry of Aviation.  *See Chung*, No.

17  SA CR 08-00024 (C.D. Cal. Feb. 6, 2008), Indictment (Dkt. 1) ¶¶ 22–23.

18      In stark contrast, the Superseding Indictment here contains no allegations to sufficiently

19  connect Mr. Ding with the PRC government, or connect the alleged offense with the PRC

20  government.  There are no alleged communications between Mr. Ding and the PRC government or

21  its officials or agents.  There are no allegations of directives from the PRC government or its

22  officials or agents to Mr. Ding to carry out the exfiltration of Google's trade secrets.  There are no

23  allegations that Mr. Ding ever provided Google's trade secrets to the PRC government or its

24  officials or agents.  And there are no allegations that Mr. Ding's travel to, or activities in, the PRC

25  were at the request of, paid for by, or otherwise connected with the PRC government.

26  **V.    CONCLUSION**

27      For the foregoing reasons, Mr. Ding respectfully requests the Court dismiss Counts 8

28  through 14 for Economic Espionage in the Superseding Indictment.

10

1

2
Dated: March 4, 2025                         Respectfully submitted,

3                                            GOODWIN PROCTER LLP

4
                                             By: /s/ Grant P. Fondo
5                                                GRANT P. FONDO (SBN 181530)
                                                 *GFondo@goodwinlaw.com*
6                                                DARRYL M. WOO (SBN 100513)
                                                 *DWoo@goodwinlaw.com*
7                                                JESSICA HUANG FUZELLIER (SBN
                                                 315208)
8                                                *JHFuzellier@goodwinlaw.com*
                                                 FARZAD FEYZI (SBN 343538)
9                                                *FFeyzi@goodwinlaw.com*
                                                 DAVID RAPP-KIRSHNER (SBN 344494)
10                                               *DRappKirshner@goodwinlaw.com*
                                                 NIRAV BHARDWAJ (SBN 350829)
11                                               *NBhardwaj@goodwinlaw.com*
                                                 **GOODWIN PROCTER** LLP
12
                                                 Attorneys for Defendant
13                                               LINWEI DING

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS                              CASE NO. 3:24-CR-00141-VC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **March 4, 2025**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **March 4, 2025**.

*/s/* Grant P. Fondo

Grant P. Fondo
