GRANT P. FONDO (SBN 181530)
GFondo@goodwinlaw.com
FARZAD FEYZI (SBN 343538)
FFeyzi@goodwinlaw.com
NIRAV BHARDWAJ (SBN 350829)
NBhardwaj@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
DWoo@goodwinlaw.com
JESSICA HUANG FUZELLIER (SBN 315208)
JHFuzellier@goodwinlaw.com
DAVID RAPP-KIRSHNER (SBN 344494)
DRappKirshner@goodwinlaw.com
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant
LINWEI DING

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINWEI DING,<br><br>Defendant. | Case No. 3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**<br><br>Date:      April 8, 2025<br>Time:      1:00 p.m.<br>Courtroom: 4 (17th Floor)<br>Judge:     Hon. Vince Chhabria<br>           450 Golden Gate Avenue<br>           San Francisco, CA 94102 |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A. *Zheng* Is Not Binding On This Court And The Decisions In This Circuit Require The Government To Allege More Than Defendant's Intent To Charge A Violation of Section 1831. ............................................................................................. 2

        1. The Government Must Allege That Mr. Ding Intended To, Or Turned Over, The "Benefit" Under Section 1831 To A Foreign Government. ...... 3

        2. The Government Must Allege That A Foreign Government Sponsored Or Coordinated Mr. Ding's Intelligence Activity. ........................................... 5

    B. The Government's Explanation of Paragraphs 24–26 of the Superseding Indictment In Its Opposition Is Not Supported By The Allegations Themselves, Which Lack The Requisite Details To State A Violation Of Section 1831 ............. 6

    C. None Of The Entities The Government Identifies In Its Opposition Are The PRC Government Or Its Instrumentalities Or Agents. ...................................................... 8

    D. The Government's Inability To Sufficiently Plead Facts To Support Charging Mr. Ding With Economic Espionage Warrants Dismissal With Prejudice. .......... 11

    E. If The Economic Espionage Charges Are Not Dismissed, The Government Should Be Required To Provide A Bill Of Particulars ......................................................... 12

III. CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Hamling v. United States*,
    418 U.S. 87 (1974) .................................................................................................... 1, 7, 11

*Russell v. United States*,
    369 U.S. 749 (1962) ............................................................................................................ 11

*United States v. Awad*,
    551 F.3d 930 (9th Cir. 2009) ......................................................................................... 1, 11

*United States v. Cecil*,
    608 F.2d 1294 (9th Cir. 1979) ............................................................................................ 11

*United States v. King*,
    587 F.2d 956 (9th Cir. 1978) .............................................................................................. 11

*United States v. Klimenka*,
    No. 22-cr-00256-SI-1, 2024 WL 4844797 (N.D. Cal. Nov. 19, 2024) ............................. 4, 11

*United States v. Lan Lee*,
    No. CR 06-0424 JW, 2010 WL 8696087 (N.D. Cal. May 21, 2010) ............................. *passim*

*United States v. Liew*,
    No. CR 11-00573-1 JSW, 2013 WL 2605126 (N.D. Cal. June 11, 2013) ........................ 3, 6

*United States v. Liew*,
    856 F.3d 585 (9th Cir. 2017) ............................................................................................ 2, 5

*United States v. Rosi*,
    27 F.3d 409 (9th Cir. 1994) .................................................................................................. 4

*United States v. Zheng*,
    113 F.4th 280 (2d Cir. 2024) ........................................................................................ *passim*

**Statutes**

18 U.S.C. § 1831 ..................................................................................................................... *passim*

18 U.S.C. § 1839 ............................................................................................................................. 9

**Other Authorities**

142 Cong. Rec. S12212 (daily ed. Oct. 2, 1996) ...................................................................... 3, 5

## I. INTRODUCTION

The government's Opposition not only highlights all the deficiencies in its Superseding Indictment, but also acknowledges that in order for this Court to rule in the government's favor, the Court would have to:

- Ignore established case law in the Ninth Circuit and in this district that requires evidence of "foreign government sponsored or coordinated intelligence activity" in order to charge a defendant with Economic Espionage, and instead agree with a non-binding out-of-circuit case, *United States v. Zheng*, that stands in conflict with that rule;

- Ignore that *Zheng* is also not factually applicable to this case, as the facts in *Zheng* are vastly different from the minimal and conclusory allegations contained in the Superseding Indictment;

- Agree that an indictment that fails to allege that the defendant intended to, or turned over, a benefit to a foreign government, instrumentality, or agent is sufficient to charge the defendant with Economic Espionage;

- Agree that an indictment that fails to even allege that a foreign government, instrumentality, or agent is *involved* in the defendant's activities is sufficient to charge the defendant with Economic Espionage; and

- Agree that an indictment that fails to identify any actual foreign government, instrumentality, or agent that the defendant intended to, or did, benefit, is sufficient to charge the defendant with Economic Espionage.

The Court should reject all of these premises, and hold the government to its burden to plead indictments with the requisite "plain, concise, and definite" written statement that "directly and expressly, without any uncertainty or ambiguity, sets forth all of the elements necessary to constitute the offense intended to be punished," *Hamling v. United States*, 418 U.S. 87, 117 (1974), such that the indictment "conforms to minimal constitutional standards," *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009).

The government's failure to allege sufficient facts to set forth all of the elements of a charge of Economic Espionage is the precise concern that legislators had in mind when cautioning against

prosecutorial overreach.  Section 1831 simply does not apply when an individual seeks to benefit himself or his private business activities in a foreign country.  More is required – specifically, a nexus or connection between that individual's activities and a foreign government or its instrumentalities or agents.  The Superseding Indictment fails to make that connection.

As the Superseding Indictment lacks sufficient detail to charge Mr. Ding with Economic Espionage, and the government's Opposition fails to demonstrate it would be able to add facts sufficient to state each of the elements of the offense, especially as to what "foreign government, instrumentality, or agent" Mr. Ding allegedly intended to benefit, the Economic Espionage charges should be dismissed with prejudice.  In the alternative, should this Court not grant dismissal, the government should be ordered to provide a bill of particulars to: (1) identify with particularity which specific "foreign government, foreign instrumentality or foreign agent" Mr. Ding allegedly intended or knew his offenses would benefit, and (2) identify with particularity the relationship, ties, and associations between each foreign instrumentality and/or foreign agent and the foreign government.  *See* Motion for Bill of Particulars (Dkt. 54) at 1, 15–16.

## II. ARGUMENT

### A. *Zheng* Is Not Binding On This Court And The Decisions In This Circuit Require The Government To Allege More Than Defendant's Intent To Charge A Violation of Section 1831.

The government's justification for its insufficient Superseding Indictment depends entirely on this Court adopting an out-of-circuit opinion, *United States v. Zheng*.  Not only is the Second Circuit's decision not binding here and contrary to the law of this Circuit, but *Zheng*'s interpretation that Section 1831 does not require proof of a foreign government's involvement in the defendant's conduct is unsupported by the plain language, title, and context of Section 1831, nor does it lead to a logical result.

The law in this Circuit requires that in order to sufficiently allege Economic Espionage, the government must demonstrate (1) that there was, at minimum, a direct and tangible benefit to the foreign government from the access to or use of the stolen trade secrets, and (2) that the foreign government sponsored or coordinated the intelligence activity.  *See United States v. Liew*, 856 F.3d

585, 597 (9th Cir. 2017); *United States v. Lan Lee*, No. CR 06-0424 JW, 2010 WL 8696087, at *6 (N.D. Cal. May 21, 2010).  The Superseding Indictment fails to allege either element.

### 1. The Government Must Allege That Mr. Ding Intended To, Or Turned Over, The "Benefit" Under Section 1831 To A Foreign Government.

The text of Section 1831 explicitly requires a defendant to have stolen trade secrets "intending or knowing that the offense will ***benefit any foreign government, foreign instrumentality, or foreign agent***." 18 U.S.C. § 1831 (emphasis added). The title of Section 1831, "Economic Espionage," signals that the "benefit" must pertain to that which is acquired by "espionage," specifically. *Id.* And "[a]n inherent feature of espionage is that the information is *turned over* to the foreign government or to an agent of the foreign government." *Lan Lee*, 2010 WL 8696087, at *6. Therefore, "[b]y its terms, a violation of Section 1831 requires some evidence of foreign governmental *involvement*." *United States v. Liew*, No. CR 11-00573-1 JSW, 2013 WL 2605126, at *2 (N.D. Cal. June 11, 2013) (emphasis).

The context and legislative history of the EEA also supports this requirement, with legislators specifically pointing out that Section 1831 penalizes the theft of trade secrets only "when it is done to benefit a foreign government, instrumentality, or agent." *See* 142 Cong. Rec. S12212 (daily ed. Oct. 2, 1996). "[T]he prosecution must show *in each instance* that the perpetrator intended to or knew that his or her actions would aid a foreign government, instrumentality, or agent." *Id.* (emphasis added). Even a "volunteer spy," to borrow the government's words, must have intended for the stolen trade secrets to be given to a foreign government, in order for the "benefit" requirement of Section 1831 to be met. *Zheng* also acknowledged that Section 1831 requires a "nexus" and a "requisite level of connection with" a foreign government such that a foreign entity is raised to a "foreign instrumentality" by way of being "substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government." 113 F.4th 280, 294–295 (2d Cir. 2024). Without the "requisite level of connection," even a "volunteer spy" who steals trade secrets but does nothing with that information to evidence an intent to use or give that information for the *benefit* of a *foreign government*, has committed no crime under Section 1831. As the district court explained in *Lan Lee,* in contrast to other statutes and regulations

1  that penalize export of information to a foreign government *without* requiring a benefit to the
2  foreign government, Section 1831 requires proof that the offense "was to *aid* the government of a
3  foreign country." 2010 WL 8696087, at *7 (emphasis added).

4        The Superseding Indictment does make any such allegation. Rather, all the Superseding
5  Indictment does is reiterate the elements of Section 1831, as the government acknowledges. *See*
6  Opp. at 12, citing S.I. ¶ 46. But merely "track[ing] the language of Section 1831" is not sufficient.
7  *See id.* An indictment "cannot withstand a motion to dismiss if it does not contain the elements of
8  the charged offense in *sufficient detail*" beyond employing the statutory language alone. *See United*
9  *States v. Klimenka*, No. 22-cr-00256-SI-1, 2024 WL 4844797, at *2 (N.D. Cal. Nov. 19, 2024)
10 (emphasis added) (citing *United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994)). That "sufficient
11 detail" requires the indictment "(1) to enable the defendant to prepare his defense; (2) to ensure
12 him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable
13 him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine
14 the sufficiency of the charge." *Id.* Specifically as to a charge of Economic Espionage, as at least
15 one court in this district has pointed out, no espionage is committed "if a defendant takes the
16 information to a foreign country with no intent to *give it* or *use it* for the foreign government." *Lan*
17 *Lee*, 2010 WL 8696087 at *6. There are no allegations in the Superseding Indictment that Mr.
18 Ding intended to, or turned over, any of the purportedly exfiltrated trade secrets to the PRC
19 government or its instrumentalities or agents. There are not even allegations that Mr. Ding ever
20 intended to use or did use the purported trade secrets at Zhisuan. At most, the Superseding
21 Indictment alleges intention to benefit Mr. Ding personally, or Zhisuan, his alleged startup, but
22 does not include any allegations as to how such benefit to the PRC government would actually
23 arise. *See* S.I. ¶¶ 22, 24–26. Just as the example of a "volunteer spy" who does not intend to use
24 or give stolen trade secrets to a foreign government fails to pass muster under Section 1831, so too
25 does an individual who seeks business investments in a foreign country and is not alleged to have
26 done anything more than that. *See Lan Lee*, 2010 WL 8696087 at *6 (defendants must have
27 "intended to confer a benefit *on* the PRC, not receive a benefit *from* it" (emphasis added)).
28

### 2. The Government Must Allege That A Foreign Government Sponsored Or Coordinated Mr. Ding's Intelligence Activity.

According to Ninth Circuit jurisprudence, Section 1831 "is designed to apply *only* when there is evidence of foreign government *sponsored or coordinated* intelligence activity." *Liew*, 856 F.3d at 597 (emphasis added) (citing *United States v. Hsu*, 155 F.3d 189, 195–196 (3d Cir. 1998)). This language comes directly from the legislative history of the EEA itself, wherein legislators sought to limit governmental overreach and specifically cautioned that "[e]nforcement agencies should administer this section with its principle [sic] purpose in mind and therefore *should not apply section 1831 to foreign corporations when there is no evidence of foreign government sponsored or coordinated intelligence activity*." 142 Cong. Rec. S12212 (daily ed. Oct. 2, 1996) (emphasis added). There are no allegations whatsoever in the Superseding Indictment as to the PRC government (or its instrumentalities or agents) sponsoring or coordinating Mr. Ding's purported exfiltration of trade secrets from Google.[1]

*Lan Lee*, a case in the Northern District of California in which the government charged the defendant with Economic Espionage under Section 1831, demonstrates that the bar for alleging – and ultimately proving – foreign government sponsored or coordinated intelligence activity is high. In *Lan Lee*, Judge Ware granted defendant's motion for judgment of acquittal as to the Economic Espionage charges, holding that, among other things, there was "no evidence that any of Defendants' conduct was solicited, sponsored, coordinated by a representative of the PRC," "no evidence that Defendants intended to or were required as a condition of [receiving a cash grant] to transfer any technology to the PRC or to any instrumentality or agent or to operate on behalf of a foreign government," and no proof of "financial arrangements sought with the PRC" for transferring misappropriated trade secrets. 2010 WL 8696087, at *8. Likewise, the Superseding Indictment does not allege that the PRC government (or its instrumentalities or agents) solicitated, sponsored, or coordinated Mr. Ding's activities either in the PRC or otherwise.

Even the facts in *Zheng* demonstrate the existence of foreign government sponsored or

---

[1] The question here is not whether there was a "tasking" (as defined by the government in its Opposition), but whether there was foreign government "sponsored or coordinated" intelligence activity.

5

DEFENDANT'S REPLY ISO MOTION TO DISMISS                                      CASE NO. 3:24-CR-00141-VC

coordinated intelligence activity. There, the defendant had helped launch two businesses in the PRC, sought funding for these ventures from PRC local governments, and kept local government officials apprised of the companies' work and status. *Zheng*, 113 F.4th at 296–297. Those businesses also entered into (or contemplated entering into) contracts with PRC public universities in which they agreed to work together, dependent on defendant's companies having the technical expertise related to the trade secrets that defendant misappropriated. *Id.* at 297. Defendant also wrote status reports to local PRC government leaders. *Id.* at 296. In contrast, there are no allegations in the Superseding Indictment that Mr. Ding entered into contracts, communicated, or entered into financial arrangements, or agreed to work with the PRC government or its instrumentalities, nor are there any allegations that indicate Mr. Ding kept PRC government officials apprised of his activities.

Even under the lower standard of merely requiring foreign government *involvement* in Mr. Ding's activities, the Superseding Indictment fails. *See Zheng*, 113 F.4th at 294–295 (Second Circuit recognizing that Section 1831 is not the appropriate vehicle to prosecute someone who misappropriates a trade secret intending to benefit an entity with no "nexus" or "requisite level of connection with" a foreign government); *Liew*, 2013 WL 2605126, at *2 ("[A] violation of Section 1831 requires some evidence of foreign governmental *involvement*" (emphasis added)). As discussed in the Motion, there are no allegations in the Superseding Indictment that any of the purportedly PRC-based entities named are the PRC government, its instrumentalities, or its agents. And as discussed below in Section B, the government's attempts in its Opposition to identify the PRC governmental instrumentalities only further demonstrates that there are no facts tying Mr. Ding to the PRC government, such that the allegations are insufficient to charge him with Economic Espionage under Section 1831 .

> **B.     The Government's Explanation of Paragraphs 24–26 of the Superseding Indictment In Its Opposition Is Not Supported By The Allegations Themselves, Which Lack The Requisite Details To State A Violation Of Section 1831.**

In the Opposition the government attempts to clarify or explain how the allegations in the Superseding Indictment are tied to the charges of Economic Espionage. No clarification or explanation should be needed. Thus, as a threshold matter, this demonstrates that the Superseding

6

Indictment, on its face, is not a "plain, concise, and definite" written statement that "directly and expressly, without any uncertainty or ambiguity, set[s] forth all of the elements necessary to constitute the offense intended to be punished." *Hamling*, 418 U.S. at 117. Moreover, a plain reading of the Superseding Indictment does not support the narrative that the government tries to paint in its Opposition.

*First*, the government contends that paragraph 24 states that "[Mr.] Ding intended that his PRC startup company would fill a strategic gap in the PRC's domestic AI industry . . . ." Opp. at 1. This is not what paragraph 24 states. Paragraph 24 merely states that a PowerPoint presentation circulated to employees and potential investors cited two policy documents that called for and encouraged the development of "high-performance computing infrastructure" and "independent innovation." S.I. ¶ 24. Nothing in this paragraph actually says anything – directly or indirectly – about Mr. Ding's intent, much less his intent to benefit a foreign government or instrumentality, or that a foreign government or instrumentality is involved with any of Mr. Ding's activities. Even under *Zheng*'s standard of only requiring defendant's *intent* to benefit a foreign government, the Superseding Indictment falls short. Further, the Superseding Indictment's citation to a (purportedly) PRC policy document's provision encouraging "*independent* innovation" directly contradicts the government's contention that Mr. Ding had the requisite intent to benefit of the PRC government through the exfiltration of Google's trade secrets. *See id.* (emphasis added). Moreover, paragraph 24 does not even allege that Mr. Ding authored or had any input in creating the PowerPoint, or what was intended by circulating the PowerPoint.

*Second*, the government contends that paragraph 25 states that "[Mr.] Ding intended . . . the PRC government would provide Talent Plan money so that [Mr.] Ding's company could 'help China to have computing power infrastructure capabilities that are on par with the international level.'" Opp. at 1. Again, nothing in this paragraph states Mr. Ding's intent nor any intent to benefit a foreign government or instrumentality. At best, paragraph 25 only alleges an intent to "bestow benefits on the economy of a country" and an intent to receive incentives such as "salaries, research funds, lab space, or other incentives" – none of which are crimes. *See Lan Lee*, 2010 WL 8696087, at *6 (Section 1831 "does not penalize a defendant's intent to personally benefit or an

intent to bestow benefits on the economy of a country that might be realized from operating a company in a foreign country."). The government concedes that "thinking only of one's own personal pecuniary benefit would *not* constitute economic espionage." Opp. at 13 (emphasis added), citing *Lan Lee*, 2010 WL 8696087, at *6.

*Third*, the government contends that paragraph 26 states that "because [Mr.] Ding sought PRC government investors for his startup company, [Mr.] Ding intended and knew that his company's success would benefit, financially and technologically, instrumentalities of the PRC government." Opp. at 1. This is an unreasonable reading of a one-sentence paragraph. Neither paragraph 26 nor any other allegation in the Superseding Indictment alleges that Mr. Ding sought "*PRC government* investors." The only allegations as to investors refer to them simply as undefined "investors." *See* S.I. ¶¶ 22 ("DING . . . pitched Zhisuan to investors . . . ."), 24 ("The presentation . . . was circulated to Zhisuan investors . . . .").

*Finally*, the government contends that paragraph 26 also states that "because [Mr.] Ding and his associates marketed his company's services to government-controlled entities, [Mr.] Ding intended and knew that his company would 'provide services to multiple PRC-controlled entities, including government agencies and universities.'" Opp. at 1–2. There are multiple problems with this interpretation. Nothing in this paragraph states any intent to market to a foreign government or instrumentality or agent, or even *what* was intended to be marketed (much less that it was exfiltrated trade secrets). Nothing in this paragraph states that it was *Mr. Ding's* intent (as opposed to anyone else's) to market to and provide services to a foreign government, instrumentality, or agent. Moreover, nothing in this paragraph states what those "PRC-controlled entities, including government agencies and universities" are.

C.   **None Of The Entities The Government Identifies In Its Opposition Are The PRC Government Or Its Instrumentalities Or Agents.**

The Opposition is also the first time the government has identified the alleged "PRC and PRC instrumentalities" – all described by their relationship to Zhisuan – that Mr. Ding supposedly sought investment from and explained how they are foreign government instrumentalities. *See* Opp. at 9–10. That alone is fatal.

Importantly, the Superseding Indictment does not allege that Mr. Ding intended to use, implement or reference the purported trade secrets at Zhisuan, his so-called "PRC startup company." *See* Opp. at 1. Neither does the government does not claim that Zhisuan is itself an instrumentality or agent of the PRC government. Rather, the Economic Espionage claims hinge on alleged nexuses between Zhisuan and the PRC, which, as explained below, are attenuated at best and insufficient to allege the requisite level of government involvement to support an Economic Espionage claim. However, any connection between Zhisuan and the PRC could not possibly confer a benefit onto the PRC via the purported trade secrets since it is never alleged that Zhisuan would possess, utilize or benefit from the purported trade secrets in the first place. And, none of these entities listed in the Opposition as having an association with Zhisuan (Mingyue Lake, SWUST-TIRI, BaishanCloud, MiraclePlus, and Lingang Group) are the PRC government or an "instrumentality" or "agent" of the PRC government as defined in Section 1839 of the EEA. Even assuming the government's descriptions of these entities are true, they fall short of Section 1839's requirement that an entity be "*substantially* owned, controlled, sponsored, commanded, managed, or dominated by a foreign government" or otherwise an "officer, employee, proxy, servant, delegate, or representative of a foreign government." 18 U.S.C. § 1839(1)–(2) (emphasis added).

*First*, the government identifies Mingyue Lake, SWUST-TIRI, and BaishanCloud as "Zhisuan customers." Opp. at 10. The government describes Mingyue Lake as a technology base "established by" a government entity, but which also only "*appears to be*" government-sponsored. *Id.* at 9–10 ("Mingyue Lake *appears to be* a government-sponsored technology and innovation center") (emphasis added). "Appears to be" is not a proper standard. The government is not permitted to bring charges against a defendant based on something akin to an educated guess. This speculation bereft of facts is entirely insufficient to establish the "substantial" ownership or control of the entity by the PRC government. Likewise, the description of SWUST-TIRI as a research institute "created jointly with" "part" of the municipal government does not establish substantial ownership or control by the PRC government over the institute itself. *Id.* at 10. And the government does not describe BaishanCloud as itself an entity that is an instrumentality or agent of the PRC government, but merely asserts the unsupported conclusion that its *investors* "include"

groups funded by or affiliated with a local government and the Ministry of Finance and China Investment System, and the Guizhou provincial government fund, without any further information that such groups substantially own or control BaishanCloud.

*Second*, while MiraclePlus was included in the Superseding Indictment (*see* S.I. ¶ 22), it was described as an "incubation program" and that one of MiraclePlus' *affiliated* companies received seven percent ownership interest in Zhisuan in exchange for investment capital (*id.*). In its Opposition, the government now identifies MiraclePlus as a PRC government instrumentality, because it "has limited partners" that are government entities. Opp. at 10. Not only is this information not in the Superseding Indictment, but that MiraclePlus' *limited* partners are allegedly government entities falls short of MiraclePlus being *substantially* owned or controlled by the PRC government as required by Section 1839.

And *finally*, the government identifies Lingang Group, a "state-owned company" as a potential Zhisuan investor. Opp. at 10. At the outset, what the government means by "state-owned" is vague and ambiguous. Moreover, the government's description of Lingang Group as merely a *potential* investor suggests that even if Lingang Group were an instrumentality of the PRC government, there was no benefit given to, or intent to benefit this entity, where it was not an actual investor in Zhisuan. Were this to be sufficient to charge Mr. Ding with intending to benefit the PRC government or its instrumentalities or agents, then this would be sufficient to charge any person who seeks business investments in the PRC, simply because of the *potential* that the PRC government or its instrumentalities *might* be interested in investing in the venture. But a defendant's intent to seek funding – even from the PRC government itself – "is insufficient to satisfy the statutory requirement that the government prove that the Defendants intended to provide a benefit to the PRC, or one of its instrumentalities or agents." *Lan Lee*, 2010 WL 8696087 at *8.

If indeed the investors and potential investors were Chinese government actors that sponsored or coordinated espionage activity with Mr. Ding, it should not be difficult for the government to plainly and concisely allege those facts in a Superseding Indictment. That the government fails to do so even informally in their Opposition (filed approximately a year after charges were first brought) suggests that they cannot amend the Superseding Indictment to include

those facts because they do not exist.

### D. The Government's Inability To Sufficiently Plead Facts To Support Charging Mr. Ding With Economic Espionage Warrants Dismissal With Prejudice.

It is critical that the United States is held to its burden to provide a "plain, concise, and definite" indictment that "*without any uncertainty or ambiguity*" sets forth all of the elements of the Economic Espionage charges against Mr. Ding. *See Hamling v*, 418 U.S. at 117. Just as legislators recognized the danger of governmental overreach in prosecuting under Section 1831, "[i]t is of paramount importance to the right of the accused that the indictment contain an adequate recitation of each component of the crime that the Government must establish." *United States v. King*, 587 F.2d 956, 963 (9th Cir. 1978). The Superseding Indictment fails to provide sufficient detail to enable Mr. Ding to prepare his defense, to ensure him that he is "being prosecuted on the basis of the facts presented to the grand jury," to enable him to plead double jeopardy, or to "inform the court of the alleged facts so that it can determine the sufficiency of the charge." *See Klimenka*, 2024 WL 4844797, at *2.

It is not enough that the government has supposedly "supplemented" the Superseding Indictment with discovery and intends to provide a purported (and yet to be served) "expert report" on how Mr. Ding's "offense would have benefitted the PRC and its instrumentalities and the bases and reasons therefor." *See* Opp. at 4, 10, 23. That extrinsic information, found outside of the four corners of the Superseding Indictment, does not save the Superseding Indictment from failing to "conform[] to minimal constitutional standards." *See Awad*, 551 F.3d at 935.

Perhaps recognizing the weaknesses in the Superseding Indictment, the government claims it is capable of providing more information, but "[a] bill of particulars cannot save an invalid indictment." *See Russell v. United States*, 369 U.S. 749, 770 (1962); *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) ("If a bill of particulars were allowed to save an insufficient Indictment, the role of the grand jury as intervenor would be circumvented."). Counts 8 through 14 of the Superseding Indictment cannot be saved, through a Bill of Particulars, an expert report, or otherwise, and should be dismissed with prejudice.

### E. If The Economic Espionage Charges Are Not Dismissed, The Government Should Be Required To Provide A Bill Of Particulars.

Nonetheless, should the Court not grant dismissal of the Economic Espionage charges with prejudice, in the alternative, the government should be required to provide a bill of particulars as to those charges, specifically, to (1) identify with particularity which specific "foreign government, foreign instrumentality or foreign agent" Mr. Ding allegedly intended or knew his offenses would benefit, and (2) identify with particularity the relationship, ties, and associations between each foreign instrumentality and/or foreign agent and the foreign government. *See* Motion for Bill of Particulars (Dkt. 54) at 1, 15–16.[2]

### III. CONCLUSION

For the foregoing reasons, Mr. Ding respectfully requests the Court dismiss Counts 8 through 14 for Economic Espionage in the Superseding Indictment, or in the alternative, order the government to provide a bill of particulars as to Counts 8 through 14.

Dated: March 26, 2025

Respectfully submitted,

GOODWIN PROCTER LLP

By: /s/ *Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant
LINWEI DING

---

[2] Mr. Ding has also moved for a bill of particulars as to the Trade Secrets charges (Counts 1–7), which is currently still pending, and scheduled to be heard on April 30, 2025.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **March 26, 2025**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **March 26, 2025**.

*/s/ Grant P. Fondo*
Grant P. Fondo