UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>LINWEI DING,<br><br>        Defendant. | Case No.  24-cr-00141-VC-1<br><br>**ORDER DENYING MOTION TO DISMISS AND MOTION FOR BILL OF PARTICULARS**<br><br>Re: Dkt. Nos. 54, 63 |

The motion to dismiss is denied.

First, there is no requirement in section 1831 that the foreign government have sponsored or coordinated the trade secret theft. The inclusion of the word "espionage" in section 1831's title does not change the fact that the text requires no such government interaction. *See also United States v. Chung*, 659 F.3d 815, 828 (9th Cir. 2011) (noting that a conviction under section 1831 does not "require[] evidence of a foreign government's direction or control" but instead can rest solely on the defendant's intent to benefit a foreign government).

Second, Ding's argument that the word "benefit" as used in section 1831 must mean disclosure of the stolen trade secret is not supported by the text. As an initial matter, the statute only speaks of an intent or knowledge that the trade secret theft will benefit the foreign government, with no textual guardrails on the definition of "benefit." The legislative history supports a broader reading of "benefit," noting that a benefit could also be reputational, strategic, or tactical. H.R. Rep. 104-788 at 11 (1996) ("Rather, the government need only prove that the actor intended that his actions in copying or otherwise controlling the trade secret would benefit the foreign government, instrumentality, or agent in any way. Therefore, in this circumstance,

benefit means not only an economic benefit but also reputational, strategic, or tactical benefit."). This is especially apparent when comparing section 1832, which requires proof of an intent to "economically benefit," with section 1831, which only requires intent or knowledge that the trade secret theft will "benefit" a foreign government. *Compare* 18 U.S.C. § 1831(a) ("Whoever, intending or knowing that the offense will *benefit* any foreign government . . ." (emphasis added)) *with id.* § 1832(a) ("Whoever, with intent to convert a trade secret, . . . to the *economic benefit* of anyone other than the owner thereof . . ." (emphasis added)).

Ding's next argument, that the indictment does not sufficiently allege Ding's intent or knowledge to benefit the People's Republic of China (PRC), also fails. The government has three primary theories for proof of Ding's intent or knowledge to benefit the PRC: (1) in his marketing materials for his artificial intelligence (AI) company, Ding circulated a PowerPoint citing PRC national policies encouraging the development of domestic AI, (2) Ding applied to a PRC talent program, programs that are typically sponsored by the PRC to encourage companies to move to the PRC and through which the PRC pays for research, labs, etc. to incentivize that move, and (3) an internal memo for Ding's company noted that the company was marketing to and in communications with public universities and municipal governments for those entities to engage the company's services. Superseding Indictment ¶¶ 24–26. Certainly the third theory, which alleges Ding's intent to directly provide a service to a government entity, would satisfy section 1831, so the motion to dismiss must be denied.

The Court is somewhat skeptical of the government's first two theories. The idea, apparently, is that Ding knew about the PRC's AI initiatives and intended to benefit the PRC by filling the gap identified by the PRC and so help the PRC achieve its domestic AI goals. The idea that Ding actually intended to benefit the PRC, as opposed to benefiting himself through an opportunity PRC was providing, seems dubious. And at times, it seems as if the government is reading out of section 1831 the word "government" and is asking the Court to apply the statute to anyone who intends or knows that the trade secret theft will benefit a foreign *country*. For example, the government argues that an actor who steals a trade secret and creates a company to

take advantage of a favorable regulatory environment, knowing that a foreign government has created a favorable regulatory environment, would face liability under section 1831. But in that case, it's not clear that the actor intends or knows that taking advantage of this favorable environment will *benefit* a foreign *government*, based solely on the actor's knowledge that a favorable regulatory environment has been created by that foreign government. The first two theories will only work if the government proves that Ding intended or knew that his trade secret theft would benefit the PRC—not solely China as a country or Ding's own economic interests.

      For similar reasons, and as discussed at the hearing, Ding's motion for a bill of particulars is denied. While the indictment does not list the specific government actors to which Ding's company is alleged to have marketed its services, the government has provided the company memo listing those entities. And while Ding argues that the government has not alleged a link between Ding's trade secret theft and the use of the trade secrets at Ding's AI company, the government does allege that Ding stole the trade secrets and intended that theft to benefit the PRC through the creation and services of Ding's company. That is sufficient to put Ding on notice of the theories of liability the government intends to present at trial.

      **IT IS SO ORDERED.**

Dated: June 9, 2025

                                                     VINCE CHHABRIA
                                                     United States District Judge