GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100
Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
COLETTE LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant: LINWEI DING

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINWEI DING,<br><br>Defendant. | Case No.  3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* NOS. 16–18 TO EXCLUDE CERTAIN EXPERT TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　September 23, 2025<br>Time:　　　1:00 p.m.<br>Courtroom:　4 (17th Floor)<br>Judge:　　　Hon. Vince Chhabria<br>　　　　　　450 Golden Gate Avenue<br>　　　　　　San Francisco, CA 94102<br><br>Filed/lodged concurrently herewith:<br><br>1.  Declaration of Grant P. Fondo; and<br>2.  [Proposed] Order |

**NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* NOS. 16–18 TO EXCLUDE**

**CERTAIN EXPERT TESTIMONY**

**TO THE COURT AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 23, 2025, at 1:00 p.m., or on such other date and time as may be set by The Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Linwei Ding ("Mr. Ding") will and hereby does respectfully move *in limine* as follows:

- **Motion *in Limine* No. 16**:  Preclude the government's experts from offering legal opinions about whether documents or snippets of documents are trade secrets;

- **Motion *in Limine* No. 17**: Preclude Google employee, Mark Lohmeyer, from offering speculative testimony about what a Chinese competitor might have done with information about TPUs, GPUs, and the Diorite Chip; and

- **Motion *in Limine* No. 18**: Preclude Google employees, Alireza Ghaffarkhah and Prashant Chandra, from offering speculative expert opinion about how Google's competitors might have used the alleged trade secret documents.

Motions *in Limine* Nos. 16–18 are based on this Notice of Motions and Motions *in Limine* Nos. 16–18, the below Memorandum of Points and Authorities, the Declaration of Grant P. Fondo and the exhibits attached thereto in support, the record in this case, and on other such arguments or evidence as the Court shall deem proper.

Respectfully submitted,

Dated: September 9, 2025

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*

i

DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant:
LINWEI DING

DEFENDANT'S MOTIONS *IN LIMINE* NOS. 16–18
CASE NO. 3:24-CR-00141-VC

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT.................................................................................. 1

II.    ARGUMENT ......................................................................................................... 1

A.    Motion *in Limine* No. 16: This Court Should Preclude the Government's Experts from Offering Legal Opinions About Whether Documents or Snippets of Documents Are Trade Secrets.............................................. 1

B.    Motion *in Limine* No. 17: The Court Should Preclude Google Employee, Mark Lohmeyer, from Offering Speculative Testimony about What a Chinese Competitor Might Have Done with Information about TPUs, GPUs, and the Diorite Chip. .................................................................. 4

1.    The Proposed Testimony Should be Excluded Under Fed. R. Evid. 403. ................................................................... 5

2.    The Proposed Testimony is Improper Expert Testimony under Fed. R. Evid. 702. ................................................................... 6

C.    Motion *in Limine* No. 18: The Court Should Preclude Google Employees, Alireza Ghaffarkhah and Prashant Chandra, from Offering Speculative Expert Opinion about How Google's Competitors Might Have Used the Alleged Trade Secret Documents.............................................................. 7

III.    CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-CV-08787-TSH, 2025 WL 1002798 (N.D. Cal. Apr. 3, 2025) ................................... 9

*Caudill Seed & Warehouse Co., Inc.*, No. 3:13-cv-82-CRS, 2019 WL 1435934
(W.D. Ky. Mar. 29, 2019) .................................................................................................. 2

*Fabric Selection, Inc. v. NNW Import, Inc.*,
No. 2:16-cv-08558-CAS, 2018 WL 1779334 (C.D. Cal. Apr. 11, 2018) .............................. 6

*Hangarter v. Provident Life and Acc. Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ............................................................................................. 3

*HighMark Digit., Inc. v. Casablanca Design Ctrs., Inc.*,
No. CV 18-06105 SJO (JPR), 2020 WL 2114940 (C.D. Cal. Mar. 26, 2020) ............. 1, 2, 3, 4

*Houghtailing v. Crown Equip. Corp.*,
No. 11-CV-05040-TEH, 2014 WL 12641993 (N.D. Cal. Nov. 18, 2014) ............................. 10

*Patriarch, Inc. v. Dynomite Distrib., Inc.*,
No. CV 06-4960 CAS, 2007 WL 4800400 (C.D. Cal. Feb. 14, 2007) ................................... 2

*Proofpoint, Inc. v. Vade Secure, Inc.*,
No. 19-cv-04238-MMC, 2021 WL 2383574 (N.D. Cal. June 10, 2021) ................................ 2

*Raytheon Co. v. Indigo Sys. Corp.*,
598 F. Supp. 2d 817 (E.D. Tex. 2009) ................................................................................ 2

*Stillwell v. Smith & Nephew, Inc.*,
482 F.3d 1187 (9th Cir. 2007) ............................................................................................ 6

*United States v. Diaz*,
876 F.3d 1194 (9th Cir. 2017) ............................................................................................ 1

*United States v. Skeet*,
665 F.2d 983 (9th Cir. 1982) .............................................................................................. 9

**Federal Statutes**

18 U.S.C. § 1839(3) ............................................................................................................. 3

iv

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................................ 9

Fed. R. Crim. P. 16 .................................................................................................... 2, 9

Fed. R. Evid. 401 ........................................................................................................ 10

Fed. R. Evid. 402 ........................................................................................................ 10

Fed. R. Evid. 403 ..................................................................................................*passim*

Fed. R. Evid. 701 ................................................................................................ 7, 8, 9, 11

Fed. R. Evid. 702 ..................................................................................................*passim*

Fed. R. Evid. 703 .......................................................................................................... 7

Fed. R. Evid. 704 ...................................................................................................... 1, 7

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

Motions *in Limine* Nos. 16-18 addresses three critical evidentiary issues related to the government's disclosed expert and Google-employee witnesses. Mr. Ding seeks to preclude the government from presenting improper legal conclusions disguised as expert testimony (**Motion *in Limine* No. 16**), speculative opinions about hypothetical Chinese competitors (**Motion *in Limine* No. 17**), and lay witness testimony exceeding personal knowledge (**Motion *in Limine* No. 18**). These motions collectively ensure the jury focuses on admissible evidence relevant to the charges against Mr. Ding, rather than being swayed by prejudicial speculation, legal conclusions that invade the jury's province, or improperly disclosed expert opinions that would confuse issues and create unfair prejudice.

### II.    ARGUMENT

#### A.    Motion *in Limine* No. 16: This Court Should Preclude the Government's Experts from Offering Legal Opinions About Whether Documents or Snippets of Documents Are Trade Secrets.

The Court should preclude government witnesses from testifying or offering opinions about whether documents or snippets of documents are "trade secrets." The government witnesses should also be precluded from offering legal opinions that mirror the statutory language, including opinions that the information in the alleged trade secret documents is not "readily ascertainable."

Expert opinion testimony that "embraces an ultimate issue to be decided by the trier of fact" is not per se objectionable. *See* Fed. R. Evid. 704(a). However, experts may not give legal opinions or impermissibly direct the jury to a result. *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (describing relevant law in criminal context). The rationale behind such prohibition is that "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Id.* (alteration in original) (first quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) and then citing Fed. R. Evid. 702(a), 704(a)).

In trade secret cases, it is the jury's role to decide whether particular information is or is not trade secret and experts may not testify that certain information is trade secret. *See HighMark*

1

*Digit., Inc. v. Casablanca Design Ctrs., Inc.*, No. CV 18-06105 SJO (JPR), 2020 WL 2114940, at *7 (C.D. Cal. Mar. 26, 2020) (citation omitted) ("[A]n expert may not testify that certain technology constitutes a trade secret" because "such testimony invades the province of the jury."); *accord Caudill Seed & Warehouse Co., Inc.*, No. 3:13-cv-82-CRS, 2019 WL 1435934, at *4 (W.D. Ky. Mar. 29, 2019) ("[A]n expert opining that an item is or is not a 'trade secret' is impermissible, as it states a legal conclusion."); *Raytheon Co. v. Indigo Sys. Corp.*, 598 F. Supp. 2d 817, 821 (E.D. Tex. 2009) (distinguishing between impermissible legal opinion and factual opinion in context of trade secret litigation).

In *HighMark Digital*, for example, the court concluded that an expert "may not present the legal conclusion that HighMark's source code and HOP files constitute trade secrets." *HighMark Digit.*, 2020 WL 2114940, at *7–8; *see also Patriarch, Inc. v. Dynomite Distrib., Inc.*, No. CV 06-4960 CAS (RCx), 2007 WL 4800400, at *3 (C.D. Cal. Feb. 14, 2007) (expert testimony "regarding legal conclusions, such as whether plaintiff's customer and supplier lists were trade secrets . . . invades the province of the jury"); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2021 WL 2383574, at *1–2 (N.D. Cal. June 10, 2021) (precluding expert witness from opining that one party misappropriated another party's trade secrets).  This is affirmed by out-of-circuit cases, which have held that "[i]n the trade secret context, impermissible opinions include opinions that an item is not a trade secret or that it is 'generally known' or 'readily ascertainable.'"  *Caudill*, 2019 WL 1435934, at *4. "Instead, the expert must focus on facts and analysis, only referencing the specific phrasing of the statute when necessary and only as used by laypersons." *Id.* (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)).

The government submitted a Rule 16(a)(1)(G) expert disclosure for MIT Professor Daniel Sanchez.  Declaration of Grant P. Fondo ("Fondo Decl.") Ex. A.  The government also provided notice of two witnesses, Prashant Chandra and Alireza Ghaffarkhah, who would testify as lay witnesses, "but with aspects of the testimony to be elicited based on experience, training, and/or qualifications."[1]  *Id.*  The government proffered summaries of these witnesses' testimony.  *Id.*

---

[1] The government similarly seeks to have another of its experts, Adam Segal, to testify about the "ultimate issue of law presented."  Mr. Ding has filed a separate motion *in limine* (MIL No. 18), as to this issue and other defects with Mr. Segal's expected testimony.

Exs. C and D.  Dr. Sanchez's disclosure and Mr. Chandra and Mr. Ghaffarkhah's summaries indicate that these witnesses intend to testify that the information within the alleged trade secret documents was not "readily ascertainable" and "derives economic value from its secrecy."  *See generally id.* Exs. A, C, and D.  The Court should preclude the government from eliciting this testimony from these witnesses because this testimony amounts to an improper legal opinion and would improperly direct the jury to the result desired by the government.  *See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

Dr. Sanchez's disclosure asserts that the information in the alleged trade secret documents is "not readily ascertainable."  Fondo Decl. Ex. B at 7 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Similarly, the summaries of Mr. Chandra and Mr. Ghaffarkhah's testimony assert that they will testify that the information in the alleged trade secret documents is not "readily ascertainable."  *Id.* Ex. C at 1–2 (stating that Mr. Chandra will testify that the alleged trade secrets in categories 6 and 7 "are in the public domain or otherwise readily ascertainable"); *id.* Ex. D at 1 (stating that Mr. Chandra will testify that the alleged trade secrets in categories 1 through 5 "are in the public domain or otherwise readily ascertainable").

Such testimony is akin to the expert testimony expressly rejected by the *HighMark Digital* court.  *See HighMark Digit.*, 2020 WL 2114940, at * 8 (granting motion to exclude to the extent the expert witness "seeks to opine that HighMark's HOP files and the source code are trade secrets"). These are improper legal opinions because they parrot the language of 18 U.S.C. § 1839(3), which defines a trade secret as information that "is actually secret because it is not generally known to or readily ascertainable through proper means," and "derives independent economic value, actual or potential, from being secret."  18 U.S.C. § 1839(3).

To be clear, an expert is at times permitted to testify as to the factors underlying whether certain information or technology constitutes a trade secret.  However, this is not what the government has proposed to do in its expert disclosures. *See HighMark Digit.*, 2020 WL 2114940, at *8 (the expert "may testify to the factors underlying whether technology constitutes a trade

3

secret" and "may . . . provide opinions [regarding] . . . the value of [the] conversion software and . . . HOP files, as this testimony is relevant to the trier of fact's trade secret determination"); *see also id.* (citing *GSI Tech., Inc. v. United Memories, Inc.*, Case No. 5:13-cv-01081-PSG, 2015 WL 12942201, at *4 (N.D. Cal. Oct. 14, 2015) (permitting expert testimony on whether the technology at issue had "independent economic value or whether the party undertook reasonable efforts to maintain their secrecy")).  Rather, throughout the expert disclosures, Dr. Sanchez, Mr. Chandra, and Mr. Ghaffarkhah offer legal conclusions (like those addressed above) that certain information is not "readily ascertainable" without describing what was ascertainable, thereby improperly substituting their own opinions for those of the jury. Because these portions of the proposed testimony opine on the ultimate legal issue, they are merely "regurgitat[ing]" the Government's claims and should consequently be excluded.[2]  *See id.*, at *8 (conclusion in expert report inadmissible under Fed. R. Evid. 702(a) as it "is an uncritical regurgitation of HighMark's claims").

**B.**    **Motion *in Limine* No. 17: The Court Should Preclude Google Employee, Mark Lohmeyer, from Offering Speculative Testimony about What a Chinese Competitor Might Have Done with Information about TPUs, GPUs, and the Diorite Chip.**

On August 26, 2025, the government disclosed to defendant a four-page summary of the anticipated expert testimony of Mark Lohmeyer, a vice president/general manager of Google's AI and computing infrastructure.  Fondo Decl. Ex. E.  In the final paragraph of the disclosure, the government indicated that Mr. Lohmeyer would testify about how a Chinese competitor might use Google's TPU and GPU technology.  *Id*. at 4.  Specifically, the government stated that Mr. Lohmeyer would testify that:

> If a competitor in China were to gain non-public implementation level information about Google's AI infrastructure it would be incredibly harmful to Google because they could use it to bypass research and development and create a competitive product at a cheaper cost. If a Chinese competitor were able to gain access to Google's TPU, GPU, or Diorite technology, they could manufacture a competitive product cheaply and at scale. This would force Google to either lower its price or

---

[2] Although the government has not indicated that its witnesses will testify to the ultimate issue of whether the information is "trade secret," the Court should preclude any such testimony because it would impede or usurp the province of the jury and be unduly prejudicial to Mr. Ding under Rule 403.

lose a significant number of customers, both of which would affect Google's bottom line and could cause Google to lose billions of dollars in revenue.

*Id.* at 4.  The Court should, under Rules 403 and 702, preclude Mr. Lohmeyer from offering these speculative opinions inconsistent with the facts or the government's theories.

### 1.    The Proposed Testimony Should be Excluded Under Fed. R. Evid. 403.

***First***, the marginal relevance of the opinion (which is speculative), if any, is far outweighed by a danger of confusing the issues and misleading the jury.  Fed. R. Evid. 403.  Mr. Lohmeyer's opinion about what some unnamed Chinese companies might or could do if they had access to Google's TPU, GPU, or Diorite technology is not relevant to any issue because Mr. Ding is not accused of misappropriating Google's TPU, GPU, or Diorite technology generally, let alone conveying it to any others.  By discussing Google's broader TPU, GPU, and Diorite technologies and how they *might* be used *if* conveyed, the speculative testimony would confuse the central issues and potentially lead the jury to believe that Mr. Ding's alleged conduct was more extensive or significant than the evidence actually supports.  This "scope creep" would fundamentally alter the nature of the case the jury is asked to decide.

Mr. Lohmeyer's testimony also lacks probative value because it is inherently speculative and hypothetical.  Mr. Lohmeyer cannot testify with any certainty about what any particular Chinese company would actually do with any specific technology, making his opinions mere conjecture. His proposed opinions do not identify any specific Chinese companies, their actual capabilities, their specific intentions, their access to any allegedly misappropriated materials, or his expertise and any bases for making such assertions.

Even if not speculative and marginally relevant, the testimony would risk confusing or misleading the jury.  The proposed testimony creates substantial unfair prejudice by inviting the jury to speculate about what Chinese companies like Alibaba *might* be able to do *if* they have access to Google's technology.  This would be a distraction—there is simply no allegation that Alibaba, any large Chinese company, or any company (other than Zhisuan) was intended to get access to or benefit from Google's trade secrets, or that Mr. Ding was out selling the technology to Google's competitors, and that is contrary to the government's theory that he was stealing the technology to

5

benefit his own startup. The jury should decide this case based on what the government contends Mr. Ding actually did, not on what some unidentified Chinese entity might hypothetically do with Google's alleged trade secrets if they somehow obtained access. Further, Mr. Lohmeyer's opinions about "what Chinese companies could do" with Google's technology more broadly injects inflammatory geopolitical considerations that have no bearing on the specific acts charged. Courts routinely reject such arguments based on cultural, racial, or ethnic stereotypes under Rule 403. *See Fabric Selection, Inc. v. NNW Import, Inc.*, No. 2:16-cv-08558-CAS (MRWx), 2018 WL 1779334, at *8 (C.D. Cal. Apr. 11, 2018) (granting motion *in limine* to preclude any reference to China or Chinese companies and how their purported business practices involve intellectual property theft under Rule 403).

### 2.     The Proposed Testimony is Improper Expert Testimony under Fed. R. Evid. 702.

***Second***, Mr. Lohmeyer lacks the specialized knowledge, skill, experience, training, or education necessary to opine on what Chinese companies would or could do with specific technology. *See* Fed. R. Evid. 702; Fondo Decl. Exs. F and G.  Expert testimony about foreign business practices, market strategies, and corporate decision-making requires demonstrated expertise in international business and Chinese market dynamics. Without expertise and credentials in Chinese business practices or market research, or specific experience working in China or among Chinese companies, as well as in Google's finances, Mr. Lohmeyer cannot reliably predict how Chinese entities could or would use Google's technologies or the effect any misappropriation might have on competition or Google's revenue.

Further, expert testimony predicting future behavior requires established methodologies for such analysis. *See Stillwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) ("the test for reliability . . . is not the correctness of the expert's conclusions but the soundness of his methodology") (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)).  Mr. Lohmeyer has not demonstrated expertise in predictive modeling, behavioral analysis, or forecasting technologies, and in particular any such expertise that would support his conclusions about what certain Chinese companies could or would do.  Without established scientific or

6

technical methods for such predictions, his opinions lack the reliability required for expert testimony. Although Mr. Lohmeyer may have expertise about how Google competes for customers within China, the proposed testimony requires him to venture far beyond his established qualifications into foreign business practices, market strategies, and corporate decision making. Mr. Lohmeyer is not permitted to offer these opinions as a lay witness under Rule 701, and he does not have the knowledge, skill, experience, training, or education to offer these opinions as an expert under Rule 702, and neither has he been disclosed as a Rule 702 expert.

Mr. Lohmeyer's proposed testimony furthermore lacks sufficient relevance to the specific charges against Mr. Ding and ventures beyond the facts of this case, the government's allegations, and his stated areas of experience. The speculative nature of his opinions about hypothetical Chinese business practices, combined with the substantial risk of unfair prejudice and jury confusion, weighs heavily against admission under Rules 403, 701 and 702.  The Court should exclude all such testimony to ensure that the jury focuses on the actual evidence of Mr. Ding's alleged conduct rather than speculative scenarios involving unrelated technologies, hypothetical actors, and nonexistent government allegations.

C.    **Motion *in Limine* No. 18: The Court Should Preclude Google Employees, Alireza Ghaffarkhah and Prashant Chandra, from Offering Speculative Expert Opinion about How Google's Competitors Might Have Used the Alleged Trade Secret Documents.**

Mr. Ding respectfully moves this Court to preclude Google employees Prashant Chandra and Alireza Ghaffarkhah from offering expert opinions beyond their personal knowledge, specifically regarding whether (1) information in the alleged trade secret documents is in the public domain, and (2) about how competitors might have used the information in the trade secret documents.

On August 26, 2025, the government identified two Google employees it intends to call as lay witnesses: Mr. Chandra and Mr. Ghaffarkhah. Although the government asserts that their testimony "is not intended to be introduced as to expert opinion testimony under Rule 702, 703, and 704," the government seeks to elicit opinions from Mr. Chandra and Mr. Ghaffarkhah that

7

extend beyond the scope of their personal knowledge and into areas requiring expert qualification.

As to whether information is in the public domain, Mr. Chandra stated in interviews:

Fondo Decl. Ex. H at -74062.  Mr. Ghaffarkhah opined in interviews with the government that:

*Id.* Ex. I at -73755.

Similarly, these Google employees purport to testify about what competitors could do with Google technology generally.  For example, Mr. Chandra is expected to testify that:

> "[I]f a competitor were to gain access to Google's implementation details related to its SmartNIC, including the architecture for the GRT component of Diorite, information about how Google uses Diorite internally, and/or the software supporting Google's use of Diorite, a competitor could use the information to develop their own SmartNIC hardware or software or other competing products."

Fondo Decl. Ex. C at 3.  Similarly, Mr. Ghaffarkhah is expected to testify that:

- "[I]f a competitor had access to this information it could help them replicate Google's TPU design";

- "The information in Trade Secret Category Two could be used by a competitor to reduce the research and develop time and costs to develop an ML accelerator to compete with Google's TPU";

- "A competitor could use the information in Trade Secret Category Three to copy Google's approach to software development for TPUs and could incorporate this information into the design for an AI supercomputer"; and

- "Mr. Ghaffarkhah is anticipated to testify that if a competitor had access to the information in Categories Four and Five, it could be used to copy Google's designs and create a competing GPU-based supercomputer."

*Id.* Ex. D at 2, 4.

Rule 701 is clear: lay witness testimony must be rationally based on the witness's perception, helpful to understanding the testimony or determining a fact in issue, and not based on

8

scientific, technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  The Ninth Circuit has long recognized that lay witnesses' opinions must be "predicated upon concrete facts within their own observation and recollection—that is, facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts."  *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982).

Here, the government seeks to elicit testimony from these witnesses about (1) what information is available in the public domain, and (2) how competitors might have been able to use the alleged trade-secret technology.  *First*, the determination of what is in the public domain requires a detailed analysis of publications, patents, and information on the Internet, and a thorough comparison of that information to what is in the accused trade secret documents. Neither Mr. Chandra nor Mr. Ghaffarkhah have performed this analysis.  *Second*, the determination of what a competitor might have been able to do with the information requires expertise in competitive intelligence, market analysis, and industry-wide technical implementation.  Neither Mr. Chandra nor Mr. Ghaffarkhah has conducted the necessary reviews or analyses to support such testimony, or even purport to, and neither has been disclosed as an expert under Rule 702 because the government has not identified any methodology or evidence supporting these witnesses' opinions. Such an analysis would also require a detailed assessment of what is in each document and an analysis of how that information could be used by a competitor.  Both employees speak in unhelpful generalities about how a competitor might use the technology more broadly.  *Third*, the witnesses' speculation about potential use by some unnamed competitor is inconsistent with the government's contentions in that there is no allegation or evidence that any of the alleged trade secrets were ever conveyed to any such competitor, and contrary to the government's theory is that Mr. Ding "stole" these alleged trade secrets to benefit his startup, not sell them on the open market.

Courts have made clear that parties cannot "evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson."  Fed. R. Evid. 701 (2000 Amendment Notes).  Courts regularly exclude testimony when witnesses attempt to offer expert conclusions without having been qualified under Rule 702.  *See Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-

9

08787-TSH, 2025 WL 1002798, at *10 (N.D. Cal. Apr. 3, 2025) (excluding speculative testimony beyond personal knowledge); *Houghtailing v. Crown Equip. Corp.*, No. 11-CV-05040-TEH, 2014 WL 12641993, at *1 (N.D. Cal. Nov. 18, 2014) (granting motion to exclude improper lay opinions offered as expert conclusions).

Mr. Chandra and Mr. Ghaffarkhah may testify about technology they personally developed based on their direct experience, but they are not qualified to render expert opinions on competitive use. Allowing such testimony would not only mislead the jury and create undue prejudice under Rules 401, 402, and 403, but would also undermine the fairness of the trial by permitting the government to present expert opinions without meeting its expert disclosure obligations.

Mr. Ding respectfully requests that the Court limit Mr. Chandra and Mr. Ghaffarkhah and other Google lay witnesses to testifying about matters within their personal knowledge and experience. To the extent the government seeks to elicit testimony from these witnesses about how other competitors might have been able to use the alleged trade secret information, the Court should require the government to make an offer of proof outside the jury's presence before eliciting any testimony in this prohibited area.

The government's disclosure also states that Messrs. Chandra and Ghaffarkhah will testify relying on their personal knowledge "regarding Google's efforts to protect" the alleged trade secrets, and "about whether the alleged trade secrets . . . are in the public domain or otherwise readily ascertainable." Fondo Decl. Exs. C and D. Mr. Ding further challenges this testimony as speculative and improper expert opinion, given that neither Mr. Chandra nor Mr. Ghaffarkhah are industry or security experts.

## III.    CONCLUSION

The Court should grant these three motions *in limine* to ensure a trial focused on evidence rather than legal conclusions and speculation. Motion *in Limine* No. 15 establishes that allowing government witnesses to offer opinions about trade secret status would substitute expert judgment for jury determination, violating precedent that trade secret classification is a question for the jury. The proposed testimony from Dr. Sanchez, Mr. Chandra, and Mr. Ghaffarkhah parrots statutory language without providing factual analysis that would assist the jury.

10

Motions *in Limine* Nos. 16 and 17 demonstrate that the government seeks to introduce testimony that lacks relevance and reliability. Mr. Lohmeyer's proposed testimony about Chinese competitors introduces considerations unrelated to the charges against Mr. Ding, while Mr. Chandra and Mr. Ghaffarkhah's opinions about use extend beyond their knowledge into areas requiring expert qualification. The nature of this testimony, combined with its risk of prejudice and jury confusion, weighs against admission under Rules 403, 701, and 702. Granting these motions will ensure that the jury decides this case based on evidence of Mr. Ding's conduct rather than legal conclusions and scenarios involving actors and technologies beyond the scope of the charges.

Respectfully submitted,

Dated: September 9, 2025

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant:
LINWEI DING

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **September 9, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **September 9, 2025**.

*/s/ Grant P. Fondo*
Grant P. Fondo

12

CERTIFICATE OF SERVICE
CASE NO. 3:24-CR-00141-VC