UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA, <br><br>             Plaintiff, <br><br>      v. <br><br> LINWEI DING, <br><br>             Defendant. | Case No.  24-cr-00141-VC-1 <br><br> **ORDER REGARDING GOVERNMENT'S MOTION IN LIMINE 6 AND DING'S MOTION IN LIMINE 15** <br><br> Re: Dkt. Nos. 147, 150 |

The government seeks to admit various documents, presentations, photographs, and other files recovered on Ding's electronic devices.[1] Ding, in his overlapping motion in limine, seeks to exclude documents recovered from his devices, citing three objections: (1) authentication; (2) hearsay; and (3) Rule 403.[2]

---

[1] Although the government's motion interchangeably refers to "documents" and "files" and focuses its discussion primarily on three documents, it appears that the government seeks to admit both documents and media files.

[2] Ding's Motion in Limine 15 uses a different categorization than the government's. Ding divides the evidence from his devices into "PRC Documents" (documents alleged by the government to be issued by the PRC, its alleged instrumentalities, or entities in the PRC), "Entity Materials" (documents created by various PRC instrumentalities and entities, including Zhisuan and Rongshu), and "Visual Media" (photos, cellphone screenshots, and videos from Ding's devices). The Entity Materials appear to be a subset of the PRC Documents. For purposes of this motion, the Court is assuming that the materials discussed in Ding's Motion in Limine 15 overlap with the materials discussed in the government's Motion in Limine 6, and that this ruling addresses the materials discussed in both motions. If there are differences the Court should address, the parties can raise this issue at the next pretrial conference.

Although the government seeks guidance on a broader set of files, its motion focuses on three documents:

1. a document containing minutes of Ding's meeting with a PRC-based investment firm (the "IDG Minutes");

2. a document titled "Potential Customers of Zhisuan Technology" (the "Potential Customer List"), which the government presents as an example of a broader category of documents that Ding edited or forwarded; and

3. a PowerPoint presentation titled "CMS-Clustering Model Service Platform: Support the technical foundation of AI large devices of 10,000 GPU scale" (the "CMS Presentation"), which the government presents as an example of a broader category of documents that Ding received but did not edit or forward.

**The IDG Minutes.** According to the government, the IDG Minutes were shared in a WeChat group that included Ding, Yuan Ye (the CEO of Rongshu, a PRC-based firm that hired Ding as its CTO while Ding was employed by Google), and representatives of a PRC-based financial advisory firm called I&R Capital. Based on the chat, the government asserts that Zhisuan, the company Ding founded, retained I&R Capital to help raise investment capital. The IDG Minutes apparently contain minutes from a meeting that I&R Capital arranged with IDG Capital, a PRC-based investment firm. The document memorializes questions posed by an IDG investor, responses given by Ding and Ye, and remarks from I&R Capital suggesting improvements for certain answers. The government argues that everything in the IDG Minutes (Ding's statements, Ye's statements, the questions posed by the IDG Capital investor, and the remarks from I&R Capital) is admissible non-hearsay.[3]

The government says the statements attributable to Ding are admissible as adoptive

---

[3] Apart from the statements reflected in the IDG Minutes, the compilation of the minutes themselves is a separate level of hearsay. Absent this additional level of hearsay, the statements (at least Ding's statements) may have been admissible as non-hearsay because they are being offered for Ding's intent, rather than the truth of the assertions in the statements. But because the compilation itself is hearsay, the IDG Minutes can only be admitted pursuant to a hearsay exception or exclusion under Rule 801(d).

2

admissions because Ding reviewed the content, saved the spreadsheet to his personal account, and responded "Thank you," followed by "Very detailed" a few seconds later. The government asserts this is enough to constitute an adoptive admission under the Ninth Circuit's "possession plus" test. *See Transbay Auto Service., Inc. v. Chevron USA Inc.,* 807 F.3d 1113, 1119 (9th Cir. 2015). The government's theory is that, in this context, Ding had a business reason to speak up if his statements were misrepresented or inaccurate. Thus, his response—"Thank you" and "Very detailed"—should be read as an endorsement of the accuracy of the document he received.

But as Ding's counsel pointed out at the pretrial conference, Ding's message can also be read as simply an acknowledgment of receipt and an observation about the length and depth of the document. Ding's ambiguous message falls short of the affirmative acts defendants took in other cases where the possession plus test was satisfied. *See Transbay*, 807 F.3d at 1121 (knowingly taking an appraisal and handing it to the chairman of a bank to obtain a loan); *United States v. Ospina,* 739 F.2d 448, 451 (9th Cir.), *cert. denied,* 469 U.S. 887 (1984) (business cards admissible as adoptive admission where the defendant went to an address written on one of the cards to engage in a drug transaction). In the one case where the defendant did not affirmatively do something with the disputed document, the nature of the document's contents, and the surrounding circumstances, strongly suggested the document could be fairly attributed to the defendant. *See United States v. Carrillo*, 16 F.3d 1046, 1048–49 (9th Cir. 1994), *as amended* (May 17, 1994) (slip of paper found in the defendant's pocket was an adoptive admission where the figures on the slip of paper were consistent with the prices and quantities of a drug transaction the defendant negotiated with an undercover agent). But here, the government seeks to admit detailed meeting minutes recorded by someone else (whose exact role is unclear) on the basis of a message that may simply indicate acknowledgement of receipt, as opposed to agreement with the document's contents. Although it is a close call, given that the government's reading of the context surrounding the IDG Minutes is unsupported by any other external evidence, the Court concludes that the statements the government attributes to Ding in the IDG

Minutes are not adoptive admissions.[4]

With respect to Ye's statements in the minutes, the government also asserts that these are admissible as adopted admissions because of the back-and-forth nature of Ye and Ding's answers. Alternatively, it argues that Ye's statements are admissible not for their truth, but rather, to provide necessary context for Ding's statements. Given that Ding's own statements cannot be admitted as adoptive admissions, Ye's statements cannot be admitted as adoptive admissions on the back of Ding's statements. Similarly, the IDG Capital investor's questions cannot be admitted as context for Ding's statements.

The government also argues that the I&R Capital employee's statements are admissible because they are not being offered for their truth, but rather, to show their effect on Ding. Under the government's own narrative, the minutes would have been compiled by the I&R Capital employee after the meeting, with added commentary on how the answers could be improved. Clearly, any effect these comments could have on Ding would be after the meeting took place. But the government provides no explanation for what effect these post-hoc comments had, and why that effect is relevant to the government's case.

Even if the IDG Minutes were not barred by the rule against hearsay, they would likely be excludable under Rule 403. Although the IDG Minutes are arguably probative of Ding's intent, the value of this evidence seems slight given that the government has other evidence that goes towards Ding's intent (such as the MiraclePlus video). At the same time, the admission of the IDG Minutes presents a considerable risk of delay and waste of time, especially given that much of the context surrounding the minutes is unclear.

Finally, Ding raises the issue of authentication. Although the IDG Minutes are inadmissible for other reasons, the Court is addressing the authentication question to provide guidance with respect to the other documents the government seeks to address. The government

---

[4] It is worth clarifying that the IDG Minutes do not identify speakers by name. But the government contends that the context of the conversation makes the speaker's identity clear in all relevant instances. Although that may not be correct, the Court is assuming for purposes of this motion that the speaker of each statement can be undisputably identified.

4

argues that evidence recovered by law enforcement in the defendant's possession is prima facie authentic and asks the Court to find that testimony that the document was found in Ding's possession is enough to establish authenticity. But Ding points out that there is nothing in the record to show that the document the government presents as the IDG Minutes is the same one that was sent to Ding in the WeChat message that provides foundational context. In this scenario, Ding is correct that the government has to provide some evidence to show that the documents are linked in the way it claims they are, that is, the document it recovered from Ding's cloud account is what is referenced in the WeChat conversation recovered from Ding's phone. Moreover, because both the WeChat conversation and the IDG Meeting Minutes have been translated, the government has to show that any documents it seeks to admit are accurate translations of the originals found in Ding's possession. *Jiajie Zhu v. Jing Li*, 2019 WL 6050961, at *5 (N.D. Cal. Nov. 15, 2019) ("A translated document must be properly authenticated, and any translation must be shown to be accurate and done by a competent translator.").[5]

**The Potential Customer List and other documents Ding edited or sent.** The Potential Customer List is a two-page document that lists potential customers of Zhisuan, categorized as "Enterprise customers," "Government operations," and "Institutions of higher learning/research institutions." The list was sent by Ding in a WeChat group including employees and associates of Zhisuan, along with the message: "I modified it a little and marked it in red." The wording in the document includes some additions in red, in line with Ding's message.

Although the government would still have to authenticate the list with a showing similar to what is described above, the Potential Customer List is admissible as an adoptive admission. Given the short length of the document, the nature of the edits Ding made, and Ding's accompanying comment, it is fair to assume that Ding adopted the contents of the list. Furthermore, any Rule 403 concerns seem minimal.

---

[5] In his overlapping motion, Ding also asserts that foreign documents are not self-authenticating unless they are in an official publication or accompanied by an official certification. The government correctly points out that the specialized authenticity analysis for official public records and / or self-authenticating foreign documents is not required here.

But with respect to the other documents the government seeks to admit in this category, it is difficult to say, without more context, whether those documents would be adoptive admissions. To the extent the government seeks general guidance, it seems that the admissibility of a given document hinges on who prepared it, the nature of the document, and the specific actions Ding took with respect to the document. Naturally, the government would have a stronger case for admission with respect to documents Ding extensively edited. It would also likely have a stronger case if comments accompanying the document or other context suggested that Ding read or otherwise relied on the document, rather than just forwarded a document for someone else's review. Additionally, documents prepared by Zhisuan employees might also be adoptive admissions under Rule 801(d)(2)(D), although this would require the government to show that the creator of the document was an employee or agent of Zhisuan and was acting within the scope of that relationship.

As with the Potential Customer List, any additional documents from this category that can be admitted as adoptive admissions would also have to be properly authenticated and withstand scrutiny under Rule 403, which will require a document-by-document analysis.

**The CMS Presentation and other documents Ding did not edit or send.** The government also seeks guidance as to a category of documents that Ding received from someone else but did not edit or forward. As an example, the government discusses the CMS Presentation, which was circulated in the WeChat group with Zhisuan employees and associates. The government contends this presentation, as well as other documents that Ding received from his colleagues, are adoptive admissions because Ding acted in conformity with such documents by acting as Zhisuan's CEO.

The case that seems closest to the government's "acting-in-conformity" theory is *Carillo*, where the defendant acted in conformity with the contents of a slip of paper in his possession by negotiating a drug deal under the same terms as noted on the slip of paper. *See* 16 F.3d at 1048–49. But the government's view of what it means to act in conformity is far broader here. According to the government, the fact that Ding held himself out as CEO of Zhisuan means he

adopted every Zhisuan-related document in his possession, regardless of the contents of the document. From the WeChat excerpt the government has included, it is not even clear how many members are in the chat, or whether Ding ever said anything about or did anything with the CMS Presentation. Without more, it's a stretch to say that Ding adopted or believed in the truth of the content of the CMS presentation, let alone the content of all other Zhisuan-related documents.[6]

As with the previously discussed category of documents, the government may have an argument for admissibility under Rule 801(d)(2)(D). But to introduce any documents under this rule, the government would have to show that the person who created the document was an employee or agent acting within the scope of the relationship.

Also, as with any other document obtained from Ding's devices, any documents in this category would also have to be properly authenticated and be subject to Rule 403 balancing.

**Additional hearsay arguments.** Finally, the government says that, if for any reason, the Court finds that the documents found on Ding's devices or received by him in WeChat conversations constitute hearsay, it will seek to admit those statements not for the truth of the matter asserted, but for their effect on the listener and as evidence of the defendant's knowledge, intent, and state of mind under Rule 803(3).

The 803(3) exception seems unlikely to apply to most of the documents the government seeks to admit. This hearsay exception only applies to statements made by a declarant about their own mental or physical state, and in a fairly limited temporal window. *See* Fed. R. Evid. 803(3); *United States v. Faust*, 850 F.2d 575, 585 (9th Cir. 1988) (noting that courts have to consider "contemporaneousness, chance for reflection, and relevance" when determining admissibility under Rule 803(3)). It is not a general loophole that allows any intent-related evidence to come in. Although the Court cannot say that nothing on Ding's devices will qualify, it is difficult to

---

[6] The government says that the information in the CMS presentation is consistent with several other Zhisuan-related documents that Ding himself drafted or forwarded to others. Assuming that is true, it is unclear why the government needs the CMS presentation, given that the documents drafted or edited by Ding would be more likely to be admitted and presumably serve the same function in the government's case.

imagine that entire documents, especially those not created by Ding, can be properly admitted under this hearsay exception.

**IT IS SO ORDERED.**

Dated: November 25, 2025

_____
VINCE CHHABRIA
United States District Judge