# Exhibit 10

**Pages 1 - 272**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
  VS.                           )   **NO. 3:24-CR-00141-VC**
                                )
LINWEI DING, a.k.a. LEON DING,  )
                                )
          Defendant.            )
_____)

                      San Francisco, California
                      Wednesday, January 7, 2026


            **TRANSCRIPT OF VOIR DIRE PROCEEDINGS**


**APPEARANCES:**

For Plaintiff:
                      CRAIG H. MISSAKIAN
                      UNITED STATES ATTORNEY
                      450 Golden Gate Avenue, Box 36055
                      San Francisco, California 94102-3495
                 BY:  **CASEY E. BOOME, ASSISTANT U.S. ATTORNEY**
                      **ROLAND CHANG, ASSISTANT U.S. ATTORNEY**

                      CRAIG H. MISSAKIAN
                      UNITED STATES ATTORNEY
                      1301 Clay Street, Suite 340S
                      Oakland, California 94612-5217
                 BY:  **MOLLY K. PRIEDEMAN**
                      **ASSISTANT U.S. ATTORNEY**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**




REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

**APPEARANCES**:   (CONTINUED)

For Defendant:
                          GOODWIN PROCTER LLP
                          525 Market Street
                          San Francisco, California 94105
                   BY:    **DARRYL M. WOO, ATTORNEY AT LAW**
                          **DAVID P. RAPP-KIRSHNER, ATTORNEY AT LAW**
                          **RACHEL M. WALSH, ATTORNEY AT LAW**
                          **COLETTE A. LOWRY, ATTORNEY AT LAW**

                          GOODWIN PROCTER LLP
                          601 Marshall Street
                          Redwood City, California 94063
                   BY:    **GRANT P. FONDO, ATTORNEY AT LAW**
                          **FARZAD "FRED" FEYZI, ATTORNEY AT LAW**

                          GOODWIN PROCTER LLP
                          601 South Figueroa Street, Suite 4100
                          Los Angeles, California 90017
                   BY:    **LORA J. KRSULICH, ATTORNEY AT LAW**


Also Present:             **Andrea Valladao, Federal Bureau of**
                              **Investigation**
                          **Veronica Hernandez, Paralegal**
                          **John Jay, Trial Technician**

**PROSPECTIVE JUROR CHOW:**  Hi, Your Honor.  Raymond Chow, Juror Number 48.

**THE COURT:**  Yes.

**PROSPECTIVE JUROR CHOW:**  I thought I should disclose that I do have some personal relationships with product managers at Google directly developing AI infrastructure technologies.

And I myself have been in high-performance computing for the past 20 years, so I've been doing cloud computing for the past ten and doing a lot of, essentially, AI infrastructure architecture for the past five, so...

**THE COURT:**  Okay.  So the fact that you -- let's take the second part of that first -- right? -- the fact that you have so much personal experience in engineering in general and AI infrastructure in particular; right?

The fact that you know a lot about the topic is not -- does not automatically disqualify you from serving as a juror on this case; right?

And I guess the question is:  How much knowledge do you have about Google's AI infrastructure in particular?

**PROSPECTIVE JUROR CHOW:**  Not too deep.

**THE COURT:**  Okay.

**PROSPECTIVE JUROR CHOW:**  As I mentioned, I was at AWS for four years, so I was focused on their technologies.

**THE COURT:**  Okay.

Can you describe a little more the personal relationships you have?  I mean, are they professional relationships or are they "hang out on the weekend" type of relationships?

**PROSPECTIVE JUROR CHOW:**  Yeah, they all started as professional relationships; but due to, you know, attendance at conferences, and things like that, where we would hang out and -- I mean, we're on What's -- WhatsApp chats together and things like that; right?  So...

**THE COURT:**  Okay.  Got it.  Thank you very much.

**PROSPECTIVE JUROR CHOW:**  Sure.

**THE COURT:**  All right.  Next row, anybody have -- and, again, the question was:  Anybody have any question about the fact that this case involves Google?

(Show of hands.)

**PROSPECTIVE JUROR WANG:**  I have a thought after --

**THE COURT:**  Go ahead.  Why don't you come up and remind us of your number.

**PROSPECTIVE JUROR WANG:**  Collin Wang, Number 43.

It was after Mr. Santa Cruz here talked about the stream.  I just want to -- I was just wondering, like -- or I'm just concerned about my own role as a juror, if there were to be laws that maybe I believe are unreasonable, like, personally and that's the reason why the person would be convicted, yeah.

**THE COURT:**  Yeah.  So, for example, I mean, this will

just to make sure we're all on the same page.

Is there anything about those views about Google that you just expressed that might impact your views on a case like this, one where Google is the victim company?

**PROSPECTIVE JUROR McCARTHY:**  Well, quite frankly, as someone who is -- was/is involved in political activism, you can say -- you can -- for my opinion, considering the nature of Google, you can -- whatever the laws may be, you can consider them not actually a victim from a political perspective.

And, I mean, if I wanted to, I could just come in and go for jury nullification.  It's a thing that's been done before.  It's a thing that people continue to say on many different areas of the political sphere, if you are in those spheres and listen, which involves social media, or simply out in actual organizations, so...

**MR. CHANG:**  Okay.  So it sounds like you might not be able to completely set aside those views in a case like this one?

**PROSPECTIVE JUROR McCARTHY:**  No.

**THE COURT:**  Well, let me -- can I ask a follow-up question about that?

**MR. CHANG:**  Yes, Your Honor.

**THE COURT:**  I guess the question is, Mr. McCarthy -- we sort of discussed this with some other jurors; right?  And you have some -- have very strong feelings about -- negative

wanted to understand those a little bit more.  And so if you wouldn't mind sharing those with us, we'd appreciate it.

**PROSPECTIVE JUROR ESGUERRA:**  I share some of the same criticisms.  I would say also Google is a kind of a monopolist company.  I think that a lot of its behavior, probably corporate behavior, would or should be -- should have been prevented by a more robust antitrust regulation.  So I feel -- that's -- yeah, I feel pretty strongly about that with regard to Google, yeah.

**MR. CHANG:**  Okay.  This is not an antitrust case.  I'll state that up-front.

**PROSPECTIVE JUROR ESGUERRA:**  Yes.

**MR. CHANG:**  I think I can tell everyone that.

Is there anything about those views and opinions that might affect your deliberation in a case where Google is the victim company?

**PROSPECTIVE JUROR ESGUERRA:**  Yeah, I think it's possible.  I would say that the thing that's sitting in the back of my mind is actually a little bit more about -- possibly about policies and regulations around trade secrets and also intellectual property in general.  I know these are -- these are all distinct areas of law, as I understand it, but I tend to think of them as integrated concepts as a person involved in technology; that a lot of these are mechanisms of not controlling, but limiting or affecting the movement of ideas.

And so, yeah, as a technology person, I've thought a lot about this.  I've been involved in advocacy around this since the Electronic Frontier Foundation, so those are ideas that I feel pretty strongly about, and I -- they will -- I know they'll have to come into play.  I will not -- I won't be able to separate them when evaluating, I would say, outside mechanics of -- like around the case.  So it's -- yeah.

**MR. CHANG:**  Got it.  And thank you for sharing that. I did notice that you had some answers about that, and so let's talk about that, and we can then springboard maybe back to the Google issue.

So you mentioned that you had some thoughts on intellectual property.  Can you explain those to us?

**PROSPECTIVE JUROR ESGUERRA:**  Yeah.  I would say succinctly that I think intellectual property protections of the last maybe -- well, it's hard to give it a time span, but they tend to be, I think, over-robust and actually protect corporate interest more than the public interest and that the laws and policies should -- in order to better serve the public interest, should be more relaxed.

And the application of these laws, it depends on -- obviously, on the details and on the setting, but is unjust in some cases, improper, non-beneficial in -- yeah, in a lot of contexts.  Copyright especially, but I would argue the same for patent law and a couple other -- and other venues like that,

yeah.

MR. CHANG:  Okay.  And, in particular, you mentioned some concerns about the concept of theft.

As the Court has explained, the Government has alleged that the defendant stole trade secrets; right?

PROSPECTIVE JUROR ESGUERRA:  Yes.

MR. CHANG:  It's a theft of trade secrets case.  Of course we have to present the evidence and meet our burden, but explain a little bit more what were your concerns about even the concept of theft, which is the charge here.

PROSPECTIVE JUROR ESGUERRA:  Sure.  Yeah.  I mean -- so, again, this is coming from -- a bit from what I would understand to be a pretty radical technologist standpoint, but that ideas are not stealable.  So I think it depends a lot on -- obviously, the devil's in the details.  I don't -- I'm not sort of trying to make entire categorical statements about this, but I think it's a tricky notion to say that there are certain ideas that should not be -- that should not be moved, should not be shared with others.

And so in a lot of contexts like -- the intellectual property context or the copyright context is the strongest.  It's the place where I would most oppose the idea that these things can be stolen.  They can be copied and reproduced in a way that is unauthorized or -- and that can also -- like, there's a category that can be illegal, but I have a reflexive

kind of allergy to the idea of theft of these things, of something that could be boiled down to an idea.

So I -- obviously, I don't know the facts of this case.  Again, it's not a categorical thing, but these are -- these are beliefs that I have and ideas that I have about this, yeah.

MR. CHANG:  Okay.  My next question will be -- you've heard Judge Chhabria explain and the Court explain that you'll get instructions at the end of the case, if you're selected as a juror, on what the law is.  There is a statute on theft of trade secrets.  Would you be able to set aside those views and follow the law that the Court provides you with?

PROSPECTIVE JUROR ESGUERRA:  I would -- oh, let me --

THE COURT:  And I think the better way to ask the question is:  Do you think you would be able to follow the law despite those views?

I mean, setting aside those views is kind of -- that's an artificial concept; right?  Nobody sets aside their views. But in my job every day -- right? -- I have to issue rulings that are despite my views.  Sometimes I wish that I could rule to the contrary, but I can't, and that's the question that is being asked.

PROSPECTIVE JUROR ESGUERRA:  Yeah.  I think -- depending on how the facts come out, I don't know if we'll be asked to determine whether a thing is a trade secret.  Is that

part of the -- I don't know.  Maybe that's not something that can be answered anyway.

**THE COURT:**  That's okay.  You will be asked to determine if something is a trade secret.

**PROSPECTIVE JUROR ESGUERRA:**  If something is a trade secret?

**MR. CHANG:**  That's correct.

**THE COURT:**  Within the -- not within your view, within your definition --

**PROSPECTIVE JUROR ESGUERRA:**  Right.

**THE COURT:**  -- but within the definition of this congressional statute.

**PROSPECTIVE JUROR ESGUERRA:**  Right.  I've been an activist on these issues for a long time.  I sense that I would have a hard time not thinking about this in terms of what I would -- what I want to be true about those statutes and about those -- about these facts.

But I would put in, obviously, as much effort as possible, but I feel like the -- I've worked with a lot of lawyers and the devil is always in the details in terms of what we could write or say, and it would apply here too.  I feel it's hard for me to anticipate, but, yeah, my sort of, like, study and backgrounding in these issues has put me in a pretty -- in a place of pretty strong advocacy about this, so...

**MR. CHANG:**  Understood.

So it sounds like it would be difficult for you to put those opinions aside, given the facts and law of this case?

**PROSPECTIVE JUROR ESGUERRA:**  I agree, yes.

**MR. CHANG:**  It sounds like your opinions will overpower, perhaps, the other evidence and law that you hear in this case?

**PROSPECTIVE JUROR ESGUERRA:**  I would -- I would try not to.  I understand what the duty is as a juror, but, yeah, there's -- I have enough opinions about -- enough strong opinions about enough aspects of this that I do -- I sense that I will -- I might find it to be hard, yeah.

**MR. CHANG:**  That would be a "yes" to the overpower question?

**PROSPECTIVE JUROR ESGUERRA:**  Yes.

**THE COURT:**  "Yes" or "might"?

**PROSPECTIVE JUROR ESGUERRA:**  More like might, yeah.

**THE COURT:**  He said "might."

**MR. CHANG:**  Perhaps this might not be the best case for you to serve as a juror on?

**PROSPECTIVE JUROR ESGUERRA:**  Perhaps, yeah.  I mean, it is very interesting, but -- but I think that maybe that is part of the challenge or what -- you know, anyway.

**MR. CHANG:**  Yeah.  And, you know, one final question. Perhaps maybe in this type of case, you can't be a hundred

percent impartial?

**PROSPECTIVE JUROR ESGUERRA:** Yes, possibly.

**MR. CHANG:** All right. Let's talk about -- actually, give me a second, Your Honor.

**THE COURT:** Sure.

(Pause in proceedings.)

**MR. CHANG:** So let me ask you a hypothetical question. Let's say you are presented with facts that meet the legal definition of a trade secret as instructed by the Court. Again, he is the authority on all that. Would you be able to follow those instructions?

**PROSPECTIVE JUROR ESGUERRA:** Yes, I would try.

**MR. CHANG:** Let's talk about Google. It sounds like your views on Google might -- will color the way that you view the evidence in this case.

**PROSPECTIVE JUROR ESGUERRA:** It might, yes.

**MR. CHANG:** Okay. Will it be difficult to put those strong opinions aside on this case?

**PROSPECTIVE JUROR ESGUERRA:** I think it depends a lot on what the -- on the nature of the thing that's being alleged as a trade secret. I think that's -- if I try to project ahead, that's -- that's where I feel I'll -- I have the most imagined tension with.

**MR. CHANG:** Okay. Let's -- thank you for your time. We appreciate your honesty.

company.

THE COURT:  Oh, I see.  So it's not a subsidiary of Google.  It's a part of the Alphabet family?

PROSPECTIVE JUROR EVERETT:  It started as Google X in a Google project, and then they spun it out a few years ago.

THE COURT:  I see.

PROSPECTIVE JUROR EVERETT:  But it's still -- I still take the Google bus to work with everybody else.

THE COURT:  Got it.

PROSPECTIVE JUROR EVERETT:  Let's put it that way.

THE COURT:  Okay.  That's helpful.

Okay.  Thank you.

After hearing those questions and answers, does anybody want to ask any further ones?

MR. CHANG:  None from the Government, Your Honor.

THE COURT:  Okay.

MR. FONDO:  None, Your Honor.

THE COURT:  Okay.  Thank you.  You can come back at 4:15.

(Prospective Juror Everett leaves the courtroom.)

(Pause in proceedings.)

THE COURT:  Okay.  So I will hear cause challenges now.  I'll go back and think about the cause challenges after you make them, and then I'll come back and I'll tell you who's being excused for cause, and then you can do your -- you can

make your peremptories.

So you want to start with the Government?

**MR. CHANG:**  Yes, Your Honor.

Do you mind if I talk here or should I move the podium back?

**THE COURT:**  I don't care.

**MR. CHANG:**  Okay.  Our first cause challenge is Juror Number 36.

**THE COURT:**  Okay.

**MR. CHANG:**  She stated that she would follow her morals as opposed to the law in certain situations.

**THE COURT:**  I am not inclined to agree with that challenge.  I think that she made very clear that if it's very egregious, like -- and she brought up the death penalty, but there's no -- she didn't say anything to suggest that there would -- that would present an issue in this case.  So I would not be inclined to excuse her for cause.

**MR. CHANG:**  My recollection is she also had some concerns about what's secret or not, and based on her personal philosophical views, those seem to be pretty strongly held; and it sounded like from the tenor and context of her questioning, she would have trouble following your instruction on the -- the legal instruction that you provide at the end of the trial.

**THE COURT:**  Okay.  Any response from the defense?

**MR. FONDO:**  Yes, Your Honor.

We would disagree.  We think she was just incredibly thoughtful.  She was honest.  She's sort of soul searching in a sense, and she was just saying that -- and I think that if -- essentially saying if the rule -- I'm not going to rephrase what she said, but I don't think she's anywhere close to cause. I think she was just being honest and unbiased and saying these are not easy decisions, essentially.

THE COURT:  I agree with you, and I think the phrase "soul searching" is very apt.  I think that was -- there were several people who were kind of doing that on the fly in their comments, and I think she was one of them.

I am confident that she is -- is -- will make as good an effort as anybody else would to follow the law and do her best and do her duty as a juror.  So that challenge is denied.

MR. FONDO:  Thank you.

THE COURT:  What's the next one?

MR. CHANG:  Juror Number -- Prospective Juror Number 42.

THE COURT:  Okay.  I would be inclined to grant that one.

MR. CHANG:  It's on the basis of -- so we raised some concerns on the papers, and then in the courtroom, he doubled down on those views essentially in terms of being fair and impartial with Google being a victim company.

THE COURT:  Any objection from the defense on that

THE COURT:  -- but like 36.  Okay.

MR. FONDO:  What I mean by that, Your Honor, is he was very forthcoming.  He was honest.  He was struggling with it, but he -- you know, he was asked a number of times "Could you basically essentially follow the law," and I think he said yes. I think he is -- and I just don't think he rises to the level of cause to strike him.

THE COURT:  Yeah.

MR. CHANG:  I will say my colleagues took some very detailed notes.  I was obviously up here listening.  He did state on the record that he could not promise he could follow the law if he disagreed from a philosophical standpoint that certain information should be a trade secret.  That was --

THE COURT:  The problem with this person is that he -- he's obviously a very thoughtful, honest person, smart person. And he made some statements that, viewed in isolation, you would say, "Okay.  This guy can be a juror"; and then he made some other statements when viewed in isolation, give you concern about whether he can be a fair juror.  And it kind of depended on who was asking him questions and -- which is why judges sometimes don't like to have lawyers do voir dire but I do like it.

I think that's -- this is a tricky one, and I'm going to think a little bit more about it during our break.

MR. FONDO:  Okay.  Thank you, Your Honor.

fair and impartial juror and she should be allowed to be a potential juror.

THE COURT:  Okay.  What about the final question that I asked her?  I'm actually less concerned about the money because I think it is going to become obvious to her during trial that this is not going to have any effect on Google's stock or whatever.

What about the final question that I asked her about, like, "Let's say you get hired by this company tomorrow and then you're on a jury."  She made some clarification about the relationship between the two companies, but you're on the jury and you're working for this company.  Isn't that, like -- what would we say if she responded to the questionnaire by saying, "I work for this company.  This company is a spinoff of Google and it's part of the Alphabet family"?

MR. CHANG:  I don't think that's necessarily disqualifying per se.  And, frankly, I don't quite understand the relationship between the spinoff company and Google.

THE COURT:  I mean, my concern was alleviated a little bit --

MR. CHANG:  Yeah.

THE COURT:  -- when she said it was not a subsidiary but, rather, was -- I was under the impression that it was a subsidiary of Google, but now -- but it's a spinoff but she takes the Google bus to work.

**MR. CHANG:** Yes.  And she says -- just my recollection is, in the questionnaire she says it's a spinoff.  I have no idea, sitting here -- standing here today, what the exact corporate relationship is between those two entities.

**THE COURT:**  Okay.

**MR. FONDO:**  Your Honor, if I may just comment on that.

**THE COURT:**  Yeah.

**MR. FONDO:**  So my understanding too is she gets stock -- Google stock as compensation.

**THE COURT:**  I think she said that she would get Google stock if she got the job.

**MR. FONDO:**  Yeah.

**THE COURT:**  Yeah.

**MR. FONDO:**  And so that's -- I mean, again, I don't necessarily fully appreciate the corporate structure, but that's sort of unusual if there's not a corporate relationship, and so that's part of our concern.

**THE COURT:**  Okay.

All right.  Sorry.  What was the next one?

**MR. FONDO:**  Number 48.  This was the engineer at Nvidia, technical marketing engineer.

**THE COURT:**  Yes.

**MR. FONDO:**  We have a concern, one, he's pretty close to the technology at issue in this case.  I don't know if there's going to be trade secret concerns also about sharing --

him getting access to or seeing all the various information. Nvidia is also a very significant partner with Google.  And so those are our concerns.

THE COURT:  Okay.  Response?

MR. CHANG:  This prospective juror said he does not have a deep understanding of Google's technology.  His main flag was Nvidia does do some work with Google, they're both very large companies, and then he's friendly with some product managers at Google.  We don't think he should be struck for cause.

THE COURT:  I agree with you.  That challenge is denied.

MR. FONDO:  Your Honor, and then the last one is 95.

THE COURT:  Okay.  And, I mean, we know what he said. It's sort of a similar -- similar challenge to 5 and the one we just talked about.  What was it?  42?

MR. FONDO:  Correct, Your Honor.  In some ways I would say -- I don't know which is more significant, but it's certainly significant, Your Honor.  He does most of his work for Google; he's been doing it for, I think he said, two years; and the plan is to continue to do so.  And so we have a --

THE COURT:  Well, he has ongoing contracts with Google, but he made very clear, and I think he was -- one of the jurors was, like -- had a complete understanding that there's no financial implication for Google to this case;

right?  There's no impact on Google's stock or whatever.  I can't remember which juror that was.  Maybe it was Juror Number 3.

MR. FONDO:  It was, I think, Your Honor.

THE COURT:  I think he -- I think Mr. Kelly, Number 95, expressed that recognition as well.  And he made very clear that even though he knows people there and interacts with people there as part of his professional life, he would -- it would not affect his ability to serve as a fair juror.

So I guess I'm not -- as long as we don't think that a financial -- sort of this relationship, the fact that he derives revenue from Google is categorically excluding, I'm not sure it would be appropriate to exclude him.

I guess the question is, he has these contractual -- he has these contracts where he -- that he works on for his company and those contracts are with Google, and so that's a portion of his revenue.  Is that in and of itself, like, categorically disqualifying?

MR. FONDO:  Yeah.  And we take the position it is, Your Honor.  Someone who is that -- the alleged victim here is -- sounds like most of their revenue for his team -- it's not just him but his team -- is generated from these Google contracts, and that's a continuation going forward.  Customers try to make, you know, clients happy.  Sorry.  Whatever. Suppliers try to make --

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Wednesday, January 28, 2026

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter