# Exhibit A

**Pages 1 - 66**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
  VS.                           )   **NO. 3:24-CR-00141-VC**
                                )
LINWEI DING, a.k.a. LEON DING,  )
                                )
          Defendant.            )
_____ )

                    San Francisco, California
                    Tuesday, May 12, 2026


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

                    CRAIG H. MISSAKIAN
                    UNITED STATES ATTORNEY
                    450 Golden Gate Avenue, Box 36055
                    San Francisco, California 94102-3495
            BY:  **CASEY E. BOOME, ASSISTANT U.S. ATTORNEY**
                 **ROLAND CHANG, ASSISTANT U.S. ATTORNEY**

                    CRAIG H. MISSAKIAN
                    UNITED STATES ATTORNEY
                    1301 Clay Street, Suite 340S
                    Oakland, California 94612-5217
            BY:  **MOLLY K. PRIEDEMAN**
                 **ASSISTANT U.S. ATTORNEY**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

**APPEARANCES**:  (CONTINUED)

For Defendant:
                        GOODWIN PROCTER LLP
                        525 Market Street
                        San Francisco, California 94105
            BY:  **DAVID P. RAPP-KIRSHNER, ATTORNEY AT LAW**

                        GOODWIN PROCTER LLP
                        601 Marshall Street
                        Redwood City, California 94063
            BY:  **GRANT P. FONDO, ATTORNEY AT LAW**

**THE COURT:** April of 2023?

**MR. CHANG:** As the end of the date range. And then it was amended to January of 2024 in the second superseding indictment to account for the December 2023 downloads.

**THE COURT:** Then why didn't you end the period in December of 2023?

**MR. CHANG:** It was through the date of the execution of the search warrant on Mr. Ding's residence.

**THE COURT:** Right. So it was as long as he possessed the trade secrets. You included -- you expanded the date range to correlate with the amount of time that he possessed the trade secrets; right?

**MR. CHANG:** Yes, Your Honor. And so -- and as Your Honor knows, speaking indictments aren't required. And so if we had just alleged the plain language of the statute and charged it and had the appropriate date range, that was more than enough to provide notice under the Federal Rules of Criminal Procedure, and we did that in this case.

And "download" is part of the statutory text. It's also in the indictment. And then it's expanded until the January time frame to specifically account for the December 2023 downloads.

As we also stated in our papers, the grand jury transcript that we provided to defense counsel and to the Court made it very explicit that the December 2023 downloads were

contemplated and presented to the grand jury when they issued their indictment.

**THE COURT:**  Right.  But it seems like what you were doing in the grand jury is the same thing that you were doing at trial, which is highlighting the December 2023 downloads to show that he had consciousness of guilt, that all of this -- that his theft of the trade secrets going back -- his theft of the trade secrets back in May of 2023 was intentional.

And we know that it's intentional because when he realized that the Government was on to him and Google was on to him, he tried to conceal it; right?

**MR. CHANG:**  I would say it's both.  It's evidence of concealment.  It's evidence of consciousness of guilt.  But it's also evidence of theft and taking information without authorization.

When you look at the --

**THE COURT:**  But how is it evidence of theft?  I mean, he stole it in May of 2023.  So how was it theft of trade secrets when he transferred the information from one medium to another in December of 2023?

**MR. CHANG:**  Because as -- look, "theft" is defined very broadly in the statutes 1831 and 1832.  Congress intended them to be broad statutes, and "theft" is defined more broadly than perhaps the more colloquial sense of the word.  As Your Honor referenced, you reference the statute; it's without

personal laptop.

THE COURT:  Right.  But I'm just trying to -- is it one crime or two separate crimes?  I mean, if you're a drug dealer and you have a bunch of drugs out in the Tenderloin and you sell some drugs to Person A and then more drugs to Person B, you've committed two crimes; right?  Distribution to Person A and distribution to Person B.

MR. CHANG:  Correct.

THE COURT:  Did he commit two crimes?  Did he commit one crime of theft of trade secrets in May and another crime of theft of trade secrets in December, or was it, like, one ongoing crime?

MR. CHANG:  They're both theft of trade secrets; right?  Our argument, as charged, both instances, the uploads and the downloads, were both theft of trade secrets and economic espionage.  They're two instances of the same crime. He obviously uploaded --

THE COURT:  But --

MR. CHANG:  -- things --

THE COURT:  I'm sorry to interrupt.

MR. CHANG:  Yeah, yeah.

THE COURT:  I'm having trouble with that expression, that phrase "two instances of the same crime."  I don't know what that means.

MR. CHANG:  It's -- so we charged the crimes by

trade secret information into a personal laptop.

THE COURT:  But with the uploads -- right? -- he's uploading different information each time; right?  I mean, he uploaded some information in April of '22, some information a couple of months later, some information a couple months later. And then by May of 2023, he had stolen all of that information from Google; right?  He stole it.  He took it without authorization, and he intended to benefit somebody other than Google.  And so he committed the crimes already.

And then the information that he had already stolen, he moved it to a different medium in December.  And I just don't see how the act of moving the stuff that he already stole to a different medium can be considered the crime of theft of trade secrets.  At its core, that's the problem I have.

So the different instances of uploading -- right? -- are different from the downloading that took place in December because each time he uploaded, he stole more trade secrets.

MR. CHANG:  I would -- I would --

THE COURT:  He's done by May of '23.  Well, he might not have been done by May of '23 because he took more information after that, but you didn't charge that.

MR. CHANG:  Correct.  But we did -- we did charge the downloads, is really the point; right?

And I've made my record on the --

THE COURT:  Yes.

**MR. CHANG:** -- second superseding indictment --

**THE COURT:** Well, let's --

**MR. CHANG:** -- and the grand jury transcript.

**THE COURT:** Let's assume that you did charge it.

**MR. CHANG:** Yes.

**THE COURT:** Let's assume that you did.  Let's just say -- to clear it up, to make it easier, let's just say you included a paragraph in the indictment that said, "Oh, by the way, he also downloaded this stuff in December of 2023, and that also constitutes the crime of theft of trade secrets." Right?

I would still -- my question would still be:  Is that an indictable crime?  I mean, again, it might be indictable because it's obstruction of justice or something, but is it indictable as theft of trade secrets?  That's the part I'm still -- I'm really struggling with.

**MR. CHANG:** Understood, Your Honor.  We would request supplemental briefing on this issue, then.  This was not in your order from last night and was not an issue in the briefing, to be candid, and so it's something we would request the opportunity to brief and look through the case law and the legislative history, to the extent necessary.

**THE COURT:** Yeah.  And not just looking through the case law and legislative history, but are there other crimes that can be analogized to this one; right?  Is there some other

criminal statute that has been construed to mean that even after you have completed the crime, after you've indisputably completed the crime, that six months later, if you do something else with the stuff that you stole or you do something else with the fruits of your criminal conduct, that that can also be considered a violation of that statute?

It's a concept that I'm having a very hard time wrapping my mind around, and I don't recall ever seeing that in the criminal law before.  And so I would not limit yourself to the legislative history of this statute or the case law surrounding this statute.  Like, is this even a thing, this thing that you're saying about how even though the crime was completed, it can still be a crime to transfer the stuff that you stole from one location to another, it can be the same crime?  Is that even a thing?

Mr. Fondo, is there anything you want to say about this stuff?

**MR. FONDO:**  Yes, Your Honor.  I think clearly it cannot be a continuing crime.  Walking it down the hall, then walking it down the hall again and then walking it down the hall again is not three of the same crime.

We did actually --

**THE COURT:**  Well, but the statute does not say walking it down the hall; right?

**MR. FONDO:**  So, Your Honor --

And it also is inconsistent with their theory, which was, four times he stole many, many thousands of -- or a thousand trade secrets, whatever; we're only here to talk about 105. But those, they repeatedly spoke about the stolen trade secrets being the four ones that took place from May 2022 through April '23.

So I don't -- I think it's completely inconsistent with their theory as well at trial, and it's not what they argued before the jury.  And I think after the fact is not good enough, Your Honor.

MR. CHANG:  Your Honor, may I be heard on that point?

THE COURT:  Sure.

MR. CHANG:  I would say that the fact that the December -- defense's argument that the December 14th downloads were not part of the Government's theory of the case is flatly wrong.  It's erroneous.

We had an expert submit -- our forensic expert submitted an opinion specifically related to the December 14th, 2023, download.  We included that opinion as part of our expert disclosures.  There were slides and evidence related to that.

We referenced the December 2023 download in our motion in limine about inextricably intertwined evidence that Your Honor heard argument on.

Special Agent Valladao testified about the downloads as part of her direct examination.

that presentation to Mingyue Lake.

So now we're only five months and change beyond the point at which the Court agrees there was a crime committed, and I think it's a remarkable finding to conclude that no rational trier of fact could conclude that Mr. Ding had, at least in his mind, the intent to do the thing that we all know he did five months later.

THE COURT: Yeah.

MR. BOOME: And so --

THE COURT: I mean, I think that is -- I didn't mean to suggest that that argument was frivolous or anything. I mean, I hear what you're saying.

I guess the way I'm thinking about that -- and I'm happy to have you include that in your supplemental briefing -- is that it's already a little bit of a stretch to conclude that those activities with those two entities amounts to intending to benefit the Chinese government. I think because the statute is written so broadly, a reasonable jury could conclude that those activities reflected an intent to benefit the Chinese government. But it's already a little bit of a stretch, and --

MR. BOOME: But isn't that --

THE COURT: -- to then go back five months earlier and say that he had that intent five months earlier, that feels like too much of a stretch to me, and I'm not sure a reasonable jury could conclude that.

MR. BOOME:  You would have to find, Your Honor, that no reasonable trier of fact could conclude that Mr. Ding intended, five months beforehand, to do a thing that we all know he did.

THE COURT:  Yes.

MR. BOOME:  And that, to me, seems like the leap.

And we would respectfully ask the Court to consider that assumption.  And we'll try to find in the record the earliest possible instances that we can, with the evidence that came in through the testimony and the exhibits, of Mr. Ding discussing with his colleagues --

THE COURT:  What was the -- sorry.  What was the company called again?

MR. CHANG:  Zhisuan.

MR. BOOME:  Zhisuan?

THE COURT:  Zhisuan.

And then before that, Mr. Ding signed on to work for another company; right?

MR. BOOME:  Yes.

THE COURT:  What was that called company?

MR. BOOME:  Rongshu.

THE COURT:  And when did he sign on to work for Rongshu?

MR. BOOME:  That was June of 2022, Your Honor.

THE COURT:  June of 2022.

THE COURT:  All right.  Anything else?

MR. CHANG:  Nothing further from the Government.

MR. RAPP-KIRSHNER:  Nothing further from the defense.

THE COURT:  Okay.  Thank you.

THE COURTROOM DEPUTY:  Court is adjourned.

(Proceedings adjourned at 4:52 p.m.)

---oOo---


### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:  Thursday, May 14, 2026


_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter